548 S.E.2d 587

**Richard Charles JOHNSON, Petitioner,**

**v.**

**William D. CATOE, Director, South Carolina Department of Corrections, Respondent.**

No. 25304.

Supreme Court of South Carolina.

Heard Feb. 20, 2001.

Decided June 11, 2001.

Rehearing Denied July 18, 2001.

John H. Blume, Cornell Law School, of Ithaca, New York; and David P. Voisin, of the Mississippi Office of Post–Conviction Counsel, of Jackson, Mississippi, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy· Attorney General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter, III, all of Columbia, for respondent.

Lawrence C. Marshall, of the Center on Wrongful Convictions, of Chicago, Illinois; Barry C. Scheck, and Peter J. Neufeld, of The Innocence Project, of New York, New York; and Vance L. Cowden, of the Department of Clinical Legal Studies, of Columbia, for *amicus curiae*.

MOORE, Justice.

We have accepted this case in our original jurisdiction to consider whether petitioner is entitled to a new trial based upon after-discovered evidence. We find that he is not so entitled.

## FACTS

In September 1985, Daniel Swanson was driving his RV through North Carolina on his way to Florida when he picked up petitioner, who was hitchhiking. The following day, Swanson and petitioner picked up hitchhikers, Curtis Harbert and Connie Sue Hess, on Interstate 95. Thereafter, Swanson was shot in the back of the head with a .357 pistol at close range. His body was concealed under a mattress.

Petitioner, Harbert, and Hess continued in the RV. Petitioner, who was drinking, was driving erratically. Trooper Bruce Smalls stopped the RV after being notified about petitioner's reckless driving. During the stop, he was shot and killed.

After Trooper Smalls was initially shot, he fell or was pushed out of the RV's doorway, and landed on the shoulder of the highway. There was a small blood smear on the inside of the door jam. He was then shot while he was lying on the ground. His body was dragged down a steep embankment, with his feet closest to the RV.

Harbert and Hess went south on foot. They went into the wooded median and then to a closed weigh station about a half mile from the RV. They flagged down a car whose occupants took them back to the RV after Harbert and Hess told them about the murder. Harbert and Hess gave a 'description of petitioner who they said killed the trooper. They both had some of Swanson's possessions.

Petitioner crossed the interstate on foot and went north. He was later stopped by police and they discovered he was

carrying the .357 pistol used to kill Swanson and various items belonging to Swanson, including a TV set, in a white bag. Petitioner was wearing Swanson's watch. Swanson's class ring was found in the patrol car in which petitioner was transported.

The weapon used in the trooper's murder, a .38 pistol, along with a shotgun in its case were later found in the median. The weapons were not found in the same place and were covered with pine straw.

Petitioner had blood on him, but the blood was too small to provide a sample that could be tested. His blood alcohol level at the time of the crime was projected to be 0.23 percent. No gun powder residue was found on petitioner, Harbert, or Hess.

Petitioner was convicted in Jasper County for the murder of Trooper Smalls and was sentenced to death. On appeal, this Court reversed his conviction and sentence. *State v. Johnson,* 293 S.C. 321, 360 S.E.2d 317 (1987). After a retrial, petitioner was again convicted of murder and sentenced to death. This Court affirmed the conviction and sentence, and the United States Supreme Court denied his request for a writ of certiorari. *State v. Johnson,* 306 S.C. 119, 410 S.E.2d 547 (1991), *cert. denied,* 503 U.S. 993, 112 S.Ct. 1691, 118 L.Ed.2d 404 (1992).

Petitioner also pled guilty to the murder and armed robbery of Swanson in Clarendon County. He was sentenced to imprisonment for life for the murder and twenty-five years for the armed robbery. No direct appeal was taken from the guilty pleas.

Petitioner's post-conviction relief application, regarding his conviction and sentence for the murder of Trooper Smalls, was denied, and this Court denied his request for a writ of certiorari. He then made a request for federal habeas corpus relief, which was denied by the federal district court. The decision was affirmed by the Fourth Circuit Court of Appeals, with Judge Ervin concurring in part and dissenting in part. *Johnson v. Moore,* 164 F.3d 624 (4th Cir.1998). The United States Supreme Court denied his request for a writ of certiorari. *Johnson v. Moore,* 526 U.S. 1042, 119 S.Ct. 1340, 143 L.Ed.2d 504 (1999). We denied petitioner's subsequent re-

quest for a writ of habeas corpus. *Johnson v. Catoe,* 336 S.C. 354, 520 S.E.2d 617 (1999).

Petitioner's request to delay setting an execution date was denied and an execution date was set for October 29, 1999. Petitioner thereafter sought a stay of execution pending the filing of a petition for a writ of habeas corpus based on after-discovered evidence. We granted the stay of execution to consider whether petitioner should be granted leave to move for a new trial based on after-discovered evidence in light of a statement given by Hess on October 22, 1999. In this statement, Hess stated Harbert killed Swanson and she, alone, killed Trooper Smalls.

■ We appointed the Honorable William P. Keesley as referee to take evidence and issue a report containing his recommendations to the Court on the new trial motion, including his findings regarding the competency and credibility of Hess. The referee was further instructed to set forth his recommendations on the motion for a new trial pursuant to the standard set forth in *State v. Spann,* 334 S.C. 618, 513 S.E.2d 98 (1999).[1]

Following hearings, the referee issued his report finding Hess was competent but not credible, and finding that it was not probable Hess's statement would change the result of petitioner's conviction or death sentence if a new trial were granted.

Before addressing Hess's October 22nd statement, we believe it is pertinent to look at Hess's prior statements from 1985 through 1999. On September 27, 1985, Hess gave two statements indicating that *petitioner* killed Swanson and Trooper Smalls. On September 28, 1985, Hess gave a statement that *Harbert* killed both Swanson and Trooper Smalls.

---

1. Under *Spann,* in order to prevail on a new trial motion, the movant must show the after-discovered evidence:
   (1) is such that it would probably change the result if a new trial were granted;
   (2) has been discovered since the trial;
   (3) could not in the exercise of due diligence have been discovered prior to trial;
   (4) is material;
   (5) is not merely cumulative or impeaching.
   *State v. Spann,* 334 S.C. at 619–620, 513 S.E.2d at 99 (citation omitted).

On September 30, 1985, Hess again gave a statement that *petitioner* killed both Swanson and Trooper Smalls.

At petitioner's first trial in February 1986, Hess testified that after being stopped by the trooper, she saw petitioner pick up a gun. At this point, she said she exited the RV and then heard shots. On cross-examination by the State, Hess stated petitioner killed Swanson and the trooper. However, she reiterated she did not know if petitioner had killed Trooper Smalls after he picked up the gun because she could not see what occurred. On re-direct examination, Hess testified concerning her statement that Harbert had committed the crimes. Hess indicated she lied at that time in an attempt to protect petitioner, because the police would not believe her story that after she ran from the shooting she returned to get her shoes, because she was afraid of "going to the electric chair," because the police promised they would not tell Harbert she had implicated him in the murders, and because they had promised her food in exchange for her story.

In May 1987, Hess, who was in Nebraska, contacted her former attorney.[2] She asked that he tell the appropriate authorities that Harbert had killed Swanson. She stated petitioner did not do the shooting, that her previous statement was incorrect, and that she wanted to correct the mistakes.

On October 21, 1999, Hess was visited in the Liberty Centre[3] in Norfolk, Nebraska by Diana Holt, a representative of petitioner, to determine if Hess could add anything that might assist petitioner before he was set to be executed eight days later. Initially, Hess stated Harbert killed Swanson, but she could not remember the trooper's shooting. Holt asked Hess if her recollection could be refreshed by looking at her 1985 statement. Hess responded it would be helpful.

After refreshing her recollection by looking only at the 1985 statement that implicated Harbert, Hess stated Harbert killed

---

2. The indictments against Hess and Harbert for the murder of Trooper Smalls and for the murder and crimes in connection with the murder of Swanson were dismissed.

3. Liberty Centre provides opportunities for people with mental illnesses to be rehabilitated into the community. The program, of which Hess is a member, consists of a day program and a 24–hour staffed group home facility called Park Place.

Swanson because he was mad that Swanson had wanted to or had engaged in homosexual activity with Harbert; that Harbert said he would kill the trooper because the trooper would find the body if he entered the RV; and that Harbert fired all the shots that killed Trooper Smalls.

Hess gave a different statement later that day. In this statement, which was notarized, Hess stated that only Harbert fired the first shots at Trooper Smalls. She said after Trooper Smalls slumped in the doorway, she grabbed the gun from Harbert and pushed or kicked the trooper out with her foot and said, "there you go, bastard." Hess stated she then fired the rest of the shots when the trooper was on the ground. She also mentioned throwing the gun away.

After leaving Hess, Holt received a call from Hess on her cellular phone. Hess stated she had lied and began to cry. She stated she was the only one who shot Trooper Smalls, and that Harbert had not shot the trooper. Holt then decided to see Hess the next day to get the statement in writing.

The next day, when Holt arrived, Hess stated she could not leave the Liberty Centre. Holt then met with Patty Skokan, Assistant Director of Liberty Centre, and Dawn Zangari, Hess's case manager, and learned a notary was not available on the premises. Skokan advised Hess that she should see an attorney before signing the affidavit, which Hess agreed to do. Beverly Springer, who held a fundraising and community relations position at the Centre, was also present during this communication. Springer, who was deposed in this matter, stated Hess did not want Holt to get mad at her for speaking with an attorney. Springer also stated that Hess indicated Holt was her friend because she had bought Hess a soft drink and french fries.

Later that afternoon, several people met at attorney Jeffrey Hrouda's office for the signing of the affidavit. Hrouda agreed to represent Hess regarding the affidavit. Before Hrouda and Hess met with the others, they spoke privately. During this time, Hrouda informed Hess of her constitutional rights and advised her not to sign the affidavit.

Hess, Hrouda, Skokan, Springer, Holt, Harry Moore, the Madison County Public Defender who would be notarizing the statement, and Julie Rogers, a public defender who would

serve as a witness, then met. Before Holt read the affidavit aloud to Hess, Hrouda went over with Hess that she had the right against self-incrimination and that she did not have to sign the affidavit. Holt read the affidavit line by line and Hess responded yes after each line. At one point, Hess indicated a correction needed to be made. She stated one line should have said petitioner had no idea *she* was going to shoot the trooper instead of petitioner had no idea *Harbert* was going to shoot the trooper. The affidavit was corrected and a new copy was faxed to Hrouda's office. Holt went through the affidavit again line by line. After that, Moore, serving as the notary, told Hess the affidavit could be used against her, and that she could be prosecuted. Moore asked if she gave the statement voluntarily, if she was pressured, if Holt had promised her anything, if she had been threatened, and the source of the information. Moore then administered the oath and Hess signed the affidavit.

In this affidavit, now known as Hess's October 22nd statement, Hess stated that her testimony involving the deaths of Swanson and Trooper Smalls was false. She stated Swanson wanted her and Harbert to have sex with him, so they undressed and got in bed together. She then went to the front of the RV to speak with petitioner. She stated Harbert shot Swanson, and then broke into the compartment where Swanson kept his guns.

When Trooper Smalls stopped the RV, Harbert handed her the gun. When the trooper started to enter the RV, she shot him three times. At that point, the trooper was propped up against the RV's doorway. She stated she kicked him out of the RV and shot him as he lay on the side of the road, while screaming, "there you go, bastard." After that, she stated she ran down the interstate with Harbert, and she threw the gun away.

Hess stated she lied about what happened because she did not want to die, and that the solicitor had told her she would "fry" if she had anything to do with the murder. She stated she is now telling the truth because she cannot let petitioner die for something he did not do.

At the hearing before the referee, Hess pled the Fifth Amendment privilege against self-incrimination to the ques-

tions regarding the murders. Hess, however, answered questions regarding her mental health, such as that she believed she has multiple personalities, and that on October 14, 1999, she expressed a desire to hang herself. She also stated that in October 1999, she was feeling a lot of stress and was sad because her father was dying. She also answered questions about her past drug use. Hess further stated she had heard voices and seen things, such as little dinosaurs and skeletons with red eyes. Hess stated that at times she has told people things that are not true.

## ISSUES

(1) Is Hess a competent witness?

(2) Is Hess a credible witness?

(3) Has the standard for a new trial based upon after-discovered evidence been met?

## DISCUSSION

*Competency*

■ The referee found Hess competent as a witness. The referee noted, however, that Hess has a "very long history of mental health problems" that includes "over 5000 pages of mental health records that were obtained for the purpose of [the] hearing." The consensus of the experts who testified at the hearing was that Hess suffers from borderline personality disorder.[4] The referee noted that "[n]o expert stated that Hess is now or was ever incompetent to testify at any relevant time."

The referee found there was nothing in the "record sufficient to overcome the presumption that Ms. Hess is competent as a witness. She was competent to give the affidavit and

---

**4.** At the hearing, the experts for both sides discussed how Hess met the criteria for borderline personality disorder. This disorder can include the following:

(1) Shifts in mood lasting a few hours;

(2) Self-destructive acts, such as suicidal threats and gestures;

(3) Unstable, chaotic intense relationships characterized by viewing the self and others as "all good" or "all bad;" and

(4) Frantic efforts to avoid real or imagined abandonment, characterized by a heavy need for affection and reassurance.

would be deemed competent to testify as a witness in light of the [Rule 601(a), SCRE] [5] presumption."

Neither petitioner nor the State voiced an objection to the referee's finding of competency. In any event, in the absence of any evidence to the contrary, we adopt the referee's finding that Hess was a competent witness.

*Credibility*

In making his determination that Hess was not credible, the referee first reviewed the mental health evidence, and then evaluated whether it was likely that Hess's October 22nd statement was true by comparing the affidavit to the facts of the crime.

The referee found Hess "lies for a variety of reasons, and no one knows what prompts her to be untruthful on any particular occasion." He further stated his belief that "Hess will say almost anything, knowing it to be untrue, for reasons satisfactory to her, but a mystery to the rest of us."

The referee stated the following:

the only way people know when . . . Hess is recounting what actually happened or is espousing a fabrication from within her very disturbed mind is when they have concrete evidence that directly supports or refutes what she is saying. There is simply no way to know whether and to what extent all the questions of primary gain, the desire to please people, impulsiveness, self-protection, attention-seeking behavior, and her perceptions of right and wrong come into play.

Comparing Hess's October 22nd affidavit with the known evidence of the murder of Trooper Smalls, the referee found Hess's October 22nd statement was not consistent with the evidence. He further stated his belief that her earlier statements were more consistent with the physical evidence.

The referee conceded the crime may have happened differently, but he felt the most reasonable scenario was the one used to convict petitioner. This scenario had the trooper being distracted by Hess leaving the RV and Harbert gather-

---

5. "Every person is competent to be a witness except as otherwise provided by statute or these rules." Rule 601(a), SCRE.

ing his belongings, which permitted petitioner the opportunity to grab the .38 pistol from the area of the driver's seat and begin shooting at the trooper. Petitioner shot two or three more times, and then moved in front of the trooper and fired again, continuing to fire after Trooper Smalls fell or was pushed out of the RV. The referee concluded that it was not probable another jury would believe Hess's new affidavit if presented with the evidence he had.

On the day of the murder, Hess stated more than once that petitioner killed the trooper. The next day she said Harbert committed the crime; however, two days after this, she stated petitioner killed the trooper. At petitioner's first trial in 1986, she stated she could not see who shot the trooper; however, on cross-examination, she testified petitioner shot him. In May 1987, Hess called her former attorney and stated that Harbert had killed Swanson and that she wanted to correct the mistakes. On October 21, 1999, Hess first stated Harbert killed Swanson and that she could not remember the shooting of Trooper Smalls. In her next statement, given after she was prompted by her 1985 statement implicating Harbert in the murders, she said Harbert killed Swanson and the trooper. In her third October 21st statement, Hess stated Harbert fired the first shots at the trooper and then she fired the rest of the shots. In her final October 21st statement that became her October 22nd affidavit, Hess stated she, alone, killed Trooper Smalls. We feel these numerous varying statements undermine any determination that Hess could be a credible witness.

By considering Hess's mental health, her past statements, and by comparing her October 22nd statement with the known facts of the crime, as the referee properly did, we must conclude Hess is not a credible witness.

*Standard for a New Trial*

For petitioner to show he is entitled to a new trial, pursuant to *State v. Spann, supra,* he must show the evidence: (1) is such that it would probably change the result if a new trial were granted; (2) has been discovered since the trial; (3) could not in the exercise of due diligence have been discovered prior to trial; (4) is material; (5) is not merely cumulative or impeaching.

■■■■ We find petitioner has failed to meet the requirement for a new trial that the evidence is "such that it would probably change the result if a new trial were granted." We do not believe it is probable a jury would find Hess credible given her prior inconsistent statements.[6] Beyond these problems with Hess's credibility, we believe, as the referee found, that the known facts about Trooper Smalls's shooting do not correlate with Hess's claim that she killed the trooper. We further find the consistency of Harbert's statements to police and at petitioner's trial undermines the possibility that the result of a new trial would be different. Harbert has consistently claimed petitioner killed both Swanson and Trooper Smalls. Accordingly, we adopt the referee's findings and deny the motion for a new trial.

**DENIED.**

TOAL, C.J., and BURNETT, J., concur.

WALLER and PLEICONES, JJ., dissenting in separate opinions.

WALLER, Justice:

The issue presented in this habeas corpus matter is a simple, but troubling, one: Should the State of South Carolina execute a man for murder when someone else confesses to committing the murder and that confession has never been presented to a jury? Because I would answer that question in the negative, I respectfully dissent.

Both the majority and Justice Pleicones's dissent analyze this issue under the standard set forth in *State v. Spann*, 334 S.C. 618, 513 S.E.2d 98 (1999). Pursuant to *Spann*, a new trial motion based upon after-discovered evidence should be granted when the evidence: (1) is such that it would probably change the result if a new trial were granted; (2) has been discovered since the trial; (3) could not in the exercise of due diligence have been discovered prior to the trial; (4) is materi-

---

6. The dissent by Justice Pleicones contends a jury should have the opportunity to assess whether Hess is credible. However, in these circumstances, it is the province of this Court to make that finding because this matter was heard in our original jurisdiction. Furthermore, to decide whether Hess's statement would probably change the result of petitioner's trial, we are required to determine Hess's credibility.

al; and (5) is not merely cumulative or impeaching. Given Hess's questionable credibility, the majority concludes that Hess's statement would probably not change the result of a new trial. Justice Pleicones disagrees.

I believe that strict adherence to the *Spann* test yields the result the majority enunciates in its opinion. This result, however, is what I find troubling. Considering the unusual circumstances of this case,[7] I believe that to deny Johnson a new trial in the face of a confession by someone who was admittedly present when the murder was committed would constitute "a denial of fundamental fairness shocking to the universal sense of justice." *Butler v. State*, 302 S.C. 466, 468, 397 S.E.2d 87, 88 (1990) (citations and internal quotes omitted). Using this standard, I arrive at the conclusion that our system of justice dictates that before Johnson is put to death he must be given an opportunity to present such evidence to a jury of his peers.

Accordingly, I would grant the motion for a new trial.

PLEICONES, Justice:

I respectfully dissent. Applying the five part test, enunciated in *State v. Spann*, 334 S.C. 618, 513 S.E.2d 98 (1999), a decision to grant petitioner a new trial rests upon the determination that Connie Hess's confession "would probably change the result if a new trial were granted." *Id.* at 619, 513 S.E.2d at 99. I believe the confession would probably change the result on retrial and, therefore, would grant petitioner's motion for a new trial.

In support of the decision to deny petitioner's new trial motion, the majority finds that, in light of her history of fabrications and her mental health status, Hess's confession is not credible. They conclude that the new evidence would not likely change the result of a new trial because Hess's confession is not consistent with the known facts of the crime, and

---

7. Absent the statements of Curtis Harbert and Hess, there is no conclusive evidence that Johnson committed this murder. Moreover, Hess has given numerous statements alternatively implicating Johnson and Harbert, and now herself, as the shooter. Johnson has maintained that he has no memory of shooting Trooper Smalls. *See, e.g., State v. Johnson*, 293 S.C. 321, 324, 360 S.E.2d 317, 319 (1987).

because Curtis Harbert has consistently maintained that petitioner killed Trooper Smalls.

As support for its determination that Hess is not a credible witness, the majority cites her prior inconsistent statements. Comparing the circumstances under which the various statements were made convinces me that Hess's confession is worthy of belief.[8] When Hess's 1985 statements were made, she was under investigation for the commission of a capital offense. It is not unlikely that her statements were motivated by expectations of reward and self-preservation. Our law recognizes, and common sense dictates, that self-serving statements are inherently less reliable than are self-inculpatory statements. *See, e.g.,* Rule 804(b)(3), SCRE (providing exception to rule against hearsay where the statement, at the time of its making is against declarant's pecuniary or proprietary interest, the rationale being the assumption that persons do not make statements which are damaging to themselves unless satisfied that the statements are true).

When Hess signed the most recent statement, confessing to the murder of Trooper Smalls, she did so only after consulting with counsel. Her attorney advised Hess of her right to remain silent and that it was not in her best interest to sign the statement. Counsel urged her not to sign the statement. Despite this advice, Hess confessed. In light of these facts, I cannot agree that Hess's admission of guilt is incredible as a matter of law.[9] Further, since it is uncontroverted that Hess is competent to testify, a jury should have the opportunity to

---

8. I agree that we must address Hess's credibility in determining petitioner's entitlement to a new trial. However, in my opinion, we need not be convinced as an absolute matter of the truth of the new evidence before granting a new trial. We need only find the new evidence worthy of belief. *See State v. Fowler,* 264 S.C. 149, 213 S.E.2d 447 (1975) (where newly discovered evidence is incredible and improbable under all the circumstances, motion for new trial will be denied); *State v. Mayfield,* 235 S.C. 11, 109 S.E.2d 716 (1959) (trial court's denial of defendant's motion for new trial on basis of after-discovered evidence affirmed where trial court concluded new evidence was not worthy of belief). For the reasons stated in this dissent, I find the new evidence here worthy of belief and would therefore grant petitioner's motion.

9. The presence of the public defender, who notarized the statement and advised Hess of its damning nature, and of Liberty Center staff during its signing further demonstrate the statement's reliability.

determine the extent to which her testimony is colored by her mental problems, and to decide the relative weight her testimony is afforded.

Unlike the majority, I do not find Harbert's statements a sufficient basis to say it is probable that a jury would not reach a different result. Although they are consistent in naming petitioner as the shooter, they do contain inconsistencies. Moreover, Harbert's statements, like Hess's previous statements, were obtained while he was a suspect in the state trooper's murder.

The majority adopts the referee's finding that Hess's confession is not consistent with the known facts of the case. However, at trial the State presented no physical evidence to establish that petitioner, and not Harbert or Hess, killed Trooper Smalls. In fact, the record is devoid of any evidence which would exclude any of the three as Trooper Smalls's murderer. While it is true that police found no gun powder residue on Harbert, or Hess, no tests for gun powder residue were performed on those two until after sufficient time had elapsed for any residue to dissipate. Tests conducted in a timely manner on petitioner revealed no gun powder residue.

I conclude by noting that our system of justice reveres the probative value of confessions. To echo the words of the United States Supreme Court,

> [a] confession is like no other evidence. Indeed, the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. The admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions can have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of its mind even if told to do so.

*Arizona v. Fulminante*, 499 U.S. 279, 296, 111 S.Ct. 1246, 1257, 113 L.Ed.2d 302 (1991) (internal citations and punctuation omitted).

Given the lack of physical evidence to indicate petitioner, and not Harbert or Hess, fired the shots which killed Trooper Smalls, it is my opinion that Hess's confession would probably

404

change the result if a new trial were granted, and therefore, I dissent.