682 S.E.2d 804

**Charlean L. EASON, Appellant/Respondent,**

v.

**Fredrick W. EASON, Respondent/Appellant.**

No. 26714.

Supreme Court of South Carolina.

Heard June 24, 2009.

Decided Aug. 31, 2009.

474

Kenneth C. Porter, of Porter & Rosenfeld, of Greenville, for Appellant–Respondent.

J. Falkner Wilkes, of Greenville, for Respondent–Appellant.

Justice WALLER.

This is a cross-appeal from the family court's order which granted appellant/respondent Charlean L. Eason ("Wife") and respondent/appellant Fredrick W. Eason ("Husband") a divorce based on one year's continuous separation. We reverse in part and remand on Wife's appeal. As to Husband's appeal, we affirm pursuant to Rule 220(b)(1), SCACR.

## FACTS

The parties married on November 29, 1973 and separated on October 26, 2003.[1] On October 31, 2003, Wife filed a complaint in family court seeking legal separation and alimony ("the 2003 Action"). Husband filed an answer and counter-claim in the 2003 Action.

Mediation for the 2003 Action was conducted in September 2004, and a number of issues were settled. In the written mediation agreement, the parties each reserved "the right to seek alimony from the other until such time as [Wife] is fully employed with benefits,[2] at which time this reservation will terminate."

---

1. The parties have one son who was over 18 and attending college at the time the parties separated.

2. Wife received her associate's degree in nursing in 1987 and became a licensed registered nurse in 1988. From that time until 2001, she

A few months later, the parties signed a written agreement ("the Agreement") which had been prepared by Husband's lawyer and stated the following:

> Both parties agree that they will not seek a divorce on the grounds of adultery; they will proceed with divorce on the grounds of living separate and apart in excess of one year. **The parties also agree that neither party will use adultery as a bar to alimony.**
>
> Further, both parties agree to be equally responsible for college tuition and costs for their son.

(Emphasis added). The Agreement referenced the case number associated with the 2003 Action. Husband signed this document on December 29, 2004, and Wife signed on January 7, 2005.

Also on January 7, 2005, Wife filed a divorce complaint ("the 2005 Action").[3] The 2005 Action sought a divorce based on continuous separation for one year. Wife requested alimony, both *pendente lite* and permanently, as well as attorney's fees. Husband promptly filed an answer and counterclaim, also requesting a divorce based on continuous separation for one year. The family court issued a temporary order awarding Wife spousal support in the amount of $1,236.00 per month, which represented one third of Husband's gross pay at the time.

Over one year later, however, Husband filed a motion to amend his answer. Husband's amended answer and counterclaim requested a divorce on the ground of adultery and also alleged that Wife was in a relationship "tantamount to marriage." Husband claimed Wife should be denied alimony. The family court granted his motion to amend.

In March 2007, the family court held a final hearing. At the hearing, the parties admitted the mediation agreement from the 2003 Action, stating that all issues had been resolved except for alimony and attorney's fees with respect to the 2005

---

worked full time as a nurse at Greenville Memorial hospital. Wife stopped working due to depression. She briefly returned to nursing in 2004, but left the job after a few months when she had a breakdown and was hospitalized for depression.

**3.** The 2003 Action had been administratively dismissed.

Action.[4] The family court approved the mediation agreement, and it was incorporated into the final order.

Wife testified that she no longer works as a nurse due to her depression.[5] Her treating psychiatrist testified by deposition that Wife has major depression, an anxiety disorder, and bipolar disorder. In his opinion, Wife is medically unable to work. In February 2007, Wife applied for Social Security disability benefits. According to her financial declaration, her only income is the temporary alimony from Husband. Husband testified that he has worked for the railroad for 34 years. According to his financial declaration, he earns $3,600.00 per month.

Regarding the Agreement, Husband testified that he directed his attorney to prepare it. Husband further explained as follows:

> Me and [Wife] talked, and we were supposed to get a divorce like adults. I didn't want my children embarrassed by us going by adultery, knowing that their mama had adultery—committed adultery and I had adultery. And I thought we was just going to get [the divorce] on the conclusion that we'll both go our separate ways. I didn't know I was signing a paper for her to be with a man. I didn't know I was giving her a license to cheat.

Husband acknowledged he was about to move in with his girlfriend when he signed the document.

According to Wife, Husband asked her to sign the Agreement because "he wanted to move in with his girlfriend, [and] he didn't want me to seek the divorce on the grounds of adultery. And because I had no problem with him doing that, I didn't mind signing the paper." Wife maintained she did not commit adultery prior to signing the paper, and would not have had sex with anyone but for the Agreement.

Husband attempted to establish that Wife was continuously living with her boyfriend, Calvin Moss.[6] Wife and Moss met in

---

4. In the mediation agreement, Husband agreed to pay Wife's attorney's fees of $3,000.

5. See fn. 2, *supra.*

6. See S.C.Code Ann. § 20–3–130(B) (Supp.2008) (which provides that alimony terminates upon "the remarriage or continued cohabitation of the supported spouse"). This section also provides as follows:

May 2004 and became intimate in February 2005. In exchange for helping Wife maintain her three trailer properties and repair her cars, Moss lives in one of Wife's trailers without paying rent. Both Moss and Wife admitted that although they had lived together at times, they never cohabited for more than two through four weeks at a time. Moss testified they do not have any financial arrangements together. Both Moss and Wife testified that their relationship is not exclusive and they date other people. In addition, the parties' 27–year–old son ("Son") testified he had not witnessed his mother and Moss cohabiting for 90 continuous days.

Husband raised questions about Wife's decrease in utilities usage, such as water and gas, and introduced copies of the utilities bills to suggest that Wife was not actually living at the trailer she said she was. Wife, Son, and Moss testified that she turned off the utilities and used kerosene lamps in an attempt to save money.

The family court issued a written order barring Wife from receiving alimony because Husband established by clear and convincing evidence that Wife and Moss had been in an adulterous relationship since early 2005. Regarding Wife's argument that the Agreement estopped Husband from requesting alimony be denied, the family court found the Agreement was an unenforceable contract and in contravention of public policy. The family court specifically declined to rule on the statutory issue of whether Wife and Moss resided together for a period of 90 days or more. *See* S.C.Code Ann. § 20–3–130(B) (Supp.2008). Finally, the family court ruled that the parties shall pay their own legal fees.

Wife and Husband both appeal from the family court's order.

---

For purposes of this subsection and unless otherwise agreed to in writing by the parties, "continued cohabitation" means the supported spouse resides with another person in a romantic relationship for a period of ninety or more consecutive days. The court may determine that a continued cohabitation exists if there is evidence that the supported spouse resides with another person in a romantic relationship for periods of less than ninety days and the two periodically separate in order to circumvent the ninety-day requirement.

## ISSUES

### Wife's Appeal

1. Did the family court err in finding Wife was barred from receiving alimony when the parties agreed in writing that neither would use adultery as a bar to alimony?

2. Did the family court err in failing to award Wife attorney's fees?

### Husband's Appeal

Did the family court err in failing to terminate Wife's right to alimony based on continuous cohabitation with her boyfriend?

## STANDARD OF REVIEW

In appeals from the family court, the appellate court has jurisdiction to find facts in accordance with its view of the preponderance of the evidence. *E.g., Strickland v. Strickland,* 375 S.C. 76, 82, 650 S.E.2d 465, 469 (2007). However, this broad scope of review does not require this Court to disregard the findings of the family court. *Wooten v. Wooten,* 364 S.C. 532, 540, 615 S.E.2d 98, 102 (2005).

"Questions concerning alimony rest within the sound discretion of the family court judge whose conclusion will not be disturbed absent a showing of abuse of discretion." *Degenhart v. Burriss,* 360 S.C. 497, 500, 602 S.E.2d 96, 97 (Ct.App. 2004). An abuse of discretion occurs when the decision is controlled by some error of law or is based on findings of fact that are without evidentiary support. *Id.*

## DISCUSSION

### 1. Effect of the Agreement

Based on the doctrines of waiver and estoppel, Wife argues the Agreement should have been enforced to prevent

Husband from asserting the bar on alimony based on adultery. We agree.

South Carolina statutory law provides that no alimony may be awarded to a spouse who commits adultery before either: (1) the formal signing of a written property or marital settlement agreement, or (2) the entry of a permanent order of separate maintenance and support or of a permanent order approving a property or marital settlement agreement between the parties. S.C.Code Ann. § 20–3–130(A).

"Waiver is a voluntary and intentional abandonment or relinquishment of a known right." *Parker v. Parker,* 313 S.C. 482, 487, 443 S.E.2d 388, 391 (1994). Stated differently, waiver requires a party to have known of a right and known he was abandoning that right. *Strickland,* 375 S.C. at 85, 650 S.E.2d at 471. "Equitable estoppel occurs where a party is denied the right to plead or prove an otherwise important fact because of something which he has done or failed to do." *Parker,* 313 S.C. at 487, 443 S.E.2d at 391. This Court has recognized that "the distinction between waiver and estoppel is close, and sometimes the doctrines merge into each other with almost imperceptible gradations." *Id.* (citation omitted); *Strickland, supra.*

We find the Agreement here constitutes a waiver of the right to use adultery as a bar to alimony. Clearly, Husband knew of this right as it was his lawyer who drew up the Agreement. Therefore, Husband intentionally abandoned this right. *Strickland, supra.* Moreover, Husband actively sought Wife's signature on the Agreement because he was about to move in with his girlfriend. Thus, the trial court erred in not finding Husband was equitably estopped from using Wife's subsequent adultery as a bar to alimony. *See Parker, supra.*

Husband argues that the Agreement contravenes public policy, and therefore, the family court correctly did not enforce the Agreement. *See Berkebile v. Outen,* 311 S.C. 50, 54 n. 2, 426 S.E.2d 760, 762 n. 2 (1993) ("The general rule is that courts will not enforce a contract which is violative of public

policy, statutory law, or provisions of the Constitution."). We disagree.

In our opinion, the Agreement was a mutual promise to not sue for divorce based on adultery, and to not raise adultery as a bar to alimony. In other words, the Agreement was not against public policy, it simply was a valid waiver. Hence, it must be enforced. *See Degenhart v. Burriss,* 360 S.C. at 501, 602 S.E.2d at 98 (the family court "must enforce an unambiguous contract according to its terms regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully") (internal quote marks and citation omitted); *cf. Maxwell v. Maxwell,* 375 S.C. 182, 650 S.E.2d 680 (Ct.App.2007) (upholding a written non-modifiable separation agreement which included alimony to the wife as well as a promise not to bring a divorce action based on adultery, even though the husband later discovered the wife had committed adultery before the agreement's execution); *Croom v. Croom,* 305 S.C. 158, 406 S.E.2d 381 (Ct.App.1991) (upholding court-approved written settlement of the parties which included alimony to the wife and an agreement to not bring divorce action based on adultery despite the wife's subsequent cohabitation with her paramour).

Accordingly, we reverse the family court's ruling that the Agreement was unenforceable and remand the matter for a determination of the proper type and amount of alimony for Wife. *See* § 20-3-130(C) (enumerating factors to be considered when making an alimony award).

## 2. Attorney's Fees

Wife argues the family court erred by not awarding her attorney's fees.

An award of attorney's fees lies within the sound discretion of the family court and will not be disturbed absent an abuse of discretion. *E.g., Patel v. Patel,* 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004). In determining whether to award attorney's fees, the court should consider each party's ability to pay his or her own fees, the beneficial results obtained by counsel, the parties' respective financial conditions, and the

effect of the fee on the parties' standard of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992).

Given our disposition on Wife's first issue, the family court should reconsider Wife's request for attorney's fees on remand. *See Semken v. Semken*, 379 S.C. 71, 664 S.E.2d 493 (Ct.App.2008) (where the family court's decision to terminate the husband's alimony obligation was reversed, the issue of attorney's fees was remanded for reconsideration).

## Husband's Appeal

Husband argues the family court erred by not finding Wife was barred from receiving alimony based on her continuous cohabitation with her boyfriend. We affirm pursuant to Rule 220(b)(1), SCACR, and the following authorities: *Strickland v. Strickland*, 375 S.C. at 89, 650 S.E.2d at 472 (in order to bar alimony based on "continued cohabitation," it must be established that the supported spouse lives "under the same roof as the person with whom they are romantically involved for at least ninety consecutive days"); *Semken v. Semken*, 379 S.C. at 77, 664 S.E.2d at 497 (section 20–3–130 "requires the spouse and the paramour to actually 'live under the same roof' for ninety consecutive days, rather then merely claim the same residence for that time period").

## CONCLUSION

For the reasons discussed above, we reverse the family court's finding that Wife is barred from receiving alimony and remand to the family court for: (1) a determination of the appropriate alimony award; and (2) reconsideration of Wife's request for attorney's fees.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, JJ., concur.