685 S.E.2d 600

Governor Mark SANFORD, Petitioner,

v.

SOUTH CAROLINA STATE ETHICS COMMISSION and Herbert R. Hayden, Jr., in his official capacity as Executive Director of the State Ethics Commission, Respondents,

The Honorable Robert W. Harrell, Jr., Speaker of the South Carolina House of Representatives, Intervenor.

and

The Honorable Robert W. Harrell, Jr., Speaker of the South Carolina House of Representatives, Petitioner,

v.

South Carolina State Ethics Commission and Herbert R. Hayden, Jr., in his official capacity as Executive Director of the State Ethics Commission, Respondents,

Governor Mark Sanford, Intervenor.

No. 26741.

Supreme Court of South Carolina.

Heard Oct. 19, 2009.

Decided Nov. 5, 2009.

484

486

Karl S. Bowers, Jr., Kevin A. Hall, and M. Todd Carroll, all of Columbia, for Petitioner and Intervenor Governor Mark Sanford.

Charles F. Reid, Bradley S. Wright, Bonnie B. Goldsmith and Patrick G. Dennis, all of Columbia, for Petitioner and Intervenor Speaker Robert W. Harrell, Jr.

Cathy L. Hazelwood, of Columbia, for Respondents South Carolina State Ethics Commission and Herbert R. Hayden,

Jr., in his official capacity as Executive Director of the State Ethics Commission.

Justice WALLER.

These matters involve the confidentiality of an ethics investigation involving Governor Mark Sanford which is currently pending before the South Carolina State Ethics Commission (Commission).

## PROCEDURAL BACKGROUND

On September 30, 2009, Governor Sanford petitioned this Court for a writ of mandamus directing the Commission to comply with the statute and regulations regarding confidentiality of Commission proceedings. More specifically, the Governor requested that the Commission not be permitted to publicly disseminate any investigatory reports or other information about this investigation. The Commission filed a return in opposition to the Governor's petition for a writ of mandamus.

Robert W. Harrell, Jr., Speaker of the South Carolina House of Representatives, then filed a motion to intervene in the Governor's action. We granted that motion, and the Speaker filed a return in opposition to the Governor's petition. In addition, Speaker Harrell filed his own petition for a writ of mandamus in the Court's original jurisdiction. The Speaker asked the Court to direct the Commission to issue "its investigation materials and information to the House of Representatives" because the House is "the sole prosecuting authority for purposes of impeachment." The Commission filed a return in opposition to the Speaker's petition. The Governor sought to intervene in the Speaker's action; we granted that request.

Because of the exigencies related to the case, we agreed to entertain this matter in the Court's original jurisdiction, on an expedited basis, and heard oral arguments of the parties on October 19, 2009. On October 21, 2009, we issued an order requesting additional materials and briefs from the parties on the issue of waiver. With that briefing now complete, the matter is ripe for our decision.

## FACTS

By letter dated August 18, 2009, Governor Sanford was informed by Herbert R. Hayden, Jr., Executive Director of the Commission, that the Commission had determined an ethics complaint against the Governor set forth "sufficient facts" to warrant an investigation. *See* S.C.Code Ann. § 8–13–320(10)(c) (Supp.2008). The Governor was informed that: (1) he would be contacted by an investigator concerning any statements he desired to make; and (2) he could provide a written response to the complaint and include any documentation he would like for the Commission to consider.

Significantly, this letter also advised the Governor of the following:

In accordance with [S.C.Code Ann.] Section 8–13–320(9) and (10), **all complaints, investigations, inquires [sic], hearings, and accompanying documents are confidential unless the respondent waives the right to confidentiality in writing to the Commission,** or the Commission issues a public disposition. . . .

(Emphasis added).

By letter to Hayden dated August 24, 2009, **counsel** for the Governor stated it was his understanding that if the Governor waived his right to confidentiality the following would apply:

1. The **only** information that will be made public during the pendency of this matter is the fact that an investigation is being conducted and the Complaint Form itself;

2. The investigation and the results thereof, including any statements or documents, will remain confidential and will not be made public at any time, either during or after the conclusion of this matter;

3. If a hearing is held in this matter, such hearing will be held in executive session unless Governor Sanford requests an open hearing; and

4. Any action taken by the Commission will be made public upon final disposition.

(Emphasis in original). Counsel for the Governor further represented that his understanding was based on information Hayden had given him during their recent discussions regarding the impact of a potential waiver by the Governor.

Hayden responded to counsel's letter with his own letter dated August 27, 2009, which stated:

If Governor Sanford waives his right to confidentiality, the following will apply:

1. **The only information that will be made public during the pendency of this matter is the fact that an investigation is being conducted and the Complaint Form itself;**

2. **The investigative report, including any statements or documents, will not become part of the public record; however, any testimony given, documents entered into evidence at an administrative hearing, and the Commission's findings will become a part of the formal record along with the Commission's Decision and Order, and will be public;**

3. If a hearing is held in this matter, such hearing will be held in executive session unless Governor Sanford requests an open hearing; and

4. Any action taken by the Commission will be made public upon final disposition.

(Emphasis added). Hayden also stated that the only item "affected by a waiver of confidentiality is Item 1. **Items 2, 3 and 4 are required by either statute or regulation and will apply regardless of a waiver."** (Emphasis added).

The following day, August 28, 2009, the Governor **himself** (i.e., not counsel for the Governor) sent a signed letter to Hayden setting forth his record of "going the extra mile in fighting for transparency in our state government." The Governor's August 28th letter further stated as follows:

**In an effort to once again go the extra mile, I would like to waive my right to confidentiality in your upcoming ethics probe.** I believe that what **the whole of our travel records** will show is that this administration has worked very hard to be a good steward of taxpayer resources. It's also my hope that **my decision to take the unilateral step of waiving confidentiality** will serve to encourage both the public to invite, and legislators to lead, in changing the current system. In this system all constitutional officers, and every state employee, is held to one standard—

while the General Assembly lives under a completely different standard without transparency. I strongly believe this needs to change, and again do hope this is one of the byproducts of what takes place this fall.[1]

(Emphasis added.)

In his petition for a writ of mandamus, Governor Sanford maintains he actually intended his August 28th letter to be a "limited" waiver of confidentiality and not the unconditional waiver conveyed by the letter's clear terms.

The Governor's counsel met with Hayden on September 8, 2009. Hayden advised counsel that the Commission intended to publicly distribute its preliminary investigative report to the House of Representatives.

On September 14, 2009, the Governor filed a Motion to Enjoin Dissemination of Investigative Report with the Commission.[2] By letter dated September 15, 2009, Cathy Hazelwood, counsel for the Commission, advised the Governor's counsel that the motion was premature because the investigation into this matter is "ongoing and no report has been begun, let alone completed." She explained the Governor would receive the report "when the Commission receives the report," and at that time, there would be an opportunity "to argue any and all motions related to this matter."

Regarding Speaker Harrell's petition for a writ of mandamus, he argues that pursuant to Article XV, Section 1 of the South Carolina Constitution, the House has the sole power of

---

1. Moreover, we note the Governor also issued a press release on August 28 which stated in relevant part:

 In the continued spirit of a fair and transparent process, I am today announcing that I'll be waiving confidentiality as the Ethics Commission studies some of the allegations made in the press and by political detractors. Our administration has nothing to hide. We would welcome the public to scrutinize our record, just as the Ethics Commission will do.

 See http://www.scgovernor.com/news/releases/8-28-2009.htm.

2. The motion for an injunction requested that the Commission enjoin itself, including all commissioners and staff members, from disseminating any investigative reports, recommendations, pre-hearing reports, or any other written or oral materials or information regarding this matter that may be created by any person associated with the Commission. The motion is nearly identical to the petition for a writ of mandamus filed in this Court.

impeachment.[3] Therefore, because the House of Representatives is the prosecutorial authority for purposes of impeachment, the Speaker contends this Court should order the Commission to release its investigation materials to the House.

## ISSUES

1. Has either the Governor or the Speaker met the requirements for the issuance of a writ of mandamus?

2. Does the Governor's August 28th letter constitute a complete waiver of confidentiality under S.C.Code Ann. § 8–13–320(10)(g)?

## DISCUSSION

### 1. Writ of Mandamus

This Court has the power to issue writs or orders of injunction or mandamus. S.C. Const. Art. V, § 5; S.C.Code Ann. § 14–3–310 (1976). The writ of mandamus is "the highest judicial writ known to the law." *Willimon v. City of Greenville*, 243 S.C. 82, 86, 132 S.E.2d 169, 170 (1963); *accord Edwards v. State*, 383 S.C. 82, 678 S.E.2d 412 (2009); *City of Rock Hill v. Thompson*, 349 S.C. 197, 563 S.E.2d 101 (2002); *Ex parte Littlefield*, 343 S.C. 212, 540 S.E.2d 81 (2000). The "principal function" of mandamus "is to command and execute, and not to inquire and adjudicate; therefore, it is not the purpose of the writ to establish a legal right, but to enforce one which has already been established." *Willimon*, 132 S.E.2d at 171; *see also Porter v. Jedziniak*, 334 S.C. 16, 18, 512 S.E.2d 497, 497 (1999) ("The primary purpose of a writ of mandamus is to enforce an established right and to enforce a

---

3. Article XV, Section 1 provides as follows:

The House of Representatives alone shall have the power of impeachment in cases of serious crimes or serious misconduct in office by officials elected on a statewide basis, state judges, and such other state officers as may be designated by law. The affirmative vote of two-thirds of all members elected shall be required for an impeachment. Any officer impeached shall thereby be suspended from office until judgment in the case shall have been pronounced, and the office shall be filled during the trial in such manner as may be provided by law.

corresponding imperative duty created or imposed by law."); *Redmond v. Lexington County Sch. Dist. No. 4*, 314 S.C. 431, 445 S.E.2d 441 (1994) (a writ of mandamus is not appropriate for a discretionary authority).

To obtain a writ of mandamus requiring the performance of an act, the petitioner must show: (1) a duty to perform the act; (2) the ministerial nature of the act; (3) the petitioner's specific legal right for which discharge of the duty is necessary; and (4) a lack of any other legal remedy. *E.g., Wilson v. Preston*, 378 S.C. 348, 662 S.E.2d 580 (2008); *Porter v. Jedziniak, supra; Willimon, supra.* Mandamus is based on the theory that an officer charged with a purely ministerial duty can be compelled to perform that duty in case of refusal. *Wilson v. Preston, supra.*

The confidentiality provision of the Ethics Act is found in S.C.Code Ann. § 8–13–320(10)(g), which states as follows:

**All investigations, inquiries, hearings, and accompanying documents must remain confidential until final disposition of a matter unless the respondent waives the right to confidentiality.** The willful release of confidential information is a misdemeanor, and any person releasing such confidential information, upon conviction, must be fined not more than one thousand dollars or imprisoned not more than one year.

(Emphasis added).

We find there is no ministerial act to be performed under this provision, and consequently no duty to perform the act. Moreover, the Governor has other legal remedies available. As noted, the Governor has a motion for an injunction pending before the Commission in which he seeks the same relief he is seeking from this Court. The Commission has indicated it will not disseminate the investigative summary or preliminary report in this matter until the Governor's motion has been heard and acted upon by the Commission and, if the Commission's decision is adverse to the Governor, until he has had an opportunity to seek review of that decision. For these reasons, a writ of mandamus is simply not available to the Governor under these circumstances and his petition is therefore denied.

 Likewise, there is no ministerial act under the statute requiring the Commission's investigation materials to be provided to the House of Representatives. While the Ethics Act clearly indicates the statute "does not limit the power of either chamber of the General Assembly to impeach a public official," S.C.Code Ann. § 8–13–320(n), it is nonetheless indisputable that there is no "imperative duty created or imposed by" the Ethics Act which compels the Commission to release its investigation materials to the House. *Porter v. Jedziniak,* 334 S.C. at 18, 512 S.E.2d at 497.[4]

 Furthermore, we note the House has a number of alternative avenues available for obtaining the information it seeks, none of which have been pursued. *See, e.g.,* S.C.Code Ann. § 2–69–10 (2005); S.C.Code Ann. § 30–4–10 *et seq.* (2007 & Supp. 2008). Additionally, as the parties conceded at oral argument in this matter, the pending ethics investigation is wholly unrelated to any potential impeachment. The House of Representatives may proceed (or not proceed) with impeachment at its own choosing, irrespective of any finding by the Commission, or any other investigation of the Governor.

Accordingly, like the Governor, the Speaker has failed to establish the necessary requirements for issuing a writ of mandamus; therefore, we deny the Speaker's petition as well.

## 2. Waiver

 Although a writ of mandamus is unavailable to the Governor, we are cognizant of the Governor's pending motion filed with the Commission for an **injunction** based on the same legal grounds as are asserted to this Court in his petition for a writ of mandamus. Because it is "the substance of the requested relief that matters" and not the form in which the petition for relief is framed, we may construe the Gover-

---

4. We note that with regard to turning over evidence to the Attorney General, the Ethics Act provides it is within the "discretion" of the Commission whether to do so. S.C.Code Ann. § 8–13–320(10)(h). Discretionary authority, however, is insufficient for mandamus. *See Redmond v. Lexington County Sch. Dist. No. 4,* 314 S.C. at 438, 445 S.E.2d at 445 (a writ of mandamus is inappropriate for a discretionary authority). To the extent the Speaker argues S.C.Code Ann. Regs. 52–718(C) (Supp.2008)—which permits the Commission to release information "to another prosecuting authority"—creates an **imperative** duty appropriate for mandamus, we disagree.

nor's request as one for injunctive relief if that is substantively what he is requesting.[5] *Historic Charleston Holdings, LLC v. Mallon,* 381 S.C. 417, 437, 673 S.E.2d 448, 458 (2009); *accord Richland County v. Kaiser,* 351 S.C. 89, 567 S.E.2d 260 (Ct.App.2002) (where the Court of Appeals treated a denial of a petition for a writ of mandamus as a denial of injunctive relief).

Generally speaking, an injunction should be granted only where some irreparable injury is threatened for which the parties have no adequate remedy at law. *Greenwood County v. Shay,* 202 S.C. 16, 23 S.E.2d 825 (1943). The Governor contends that if the Commission is allowed to publicly disclose information about the investigation, "the integrity of the entire process" would be destroyed. Thus, he has requested that we **prevent** the Commission from publicly distributing any investigatory reports or other information about the investigation. Given the arguments raised by the Governor, we find the requested relief is akin to a prohibitory injunction.[6] Accordingly, we will also construe the petition as one asking for injunctive relief.

The Governor's argument is based upon the confidentiality provision of the Ethics Act and the accompanying regulations. *See* § 8–13–320(10)(g); S.C.Code Ann. Regs. 52–718 (Supp. 2008). As outlined above, the Ethics Act clearly provides a right of confidentiality; just as clearly, however, the statute allows this right to be waived by the respondent under investigation. § 8–13–320(10)(g); S.C.Code Ann. Regs. 52–718(B) (Supp.2008) (the respondent "may waive the confidentiality of the proceeding in writing filed with the Commission").

The dispositive issue therefore becomes: Did the Governor's August 28th letter waive his right to confidentiality?

A waiver is a voluntary and intentional abandonment or relinquishment of a known right. *E.g., Eason v. Eason,* 384 S.C. 473, 682 S.E.2d 804 (2009). Waiver requires a

---

**5.** As previously discussed, this Court has the power to issue a writ or order of injunction. S.C. Const. Art. V, § 5; S.C.Code Ann. § 14–3–310.

**6.** A prohibitory injunction is defined as an injunction "that forbids or restrains an act." BLACKS LAW DICTIONARY 855 (9th ed. 2009).

party to have known of a right and known that right was being abandoned. *Id.* The determination of whether one's actions constitute waiver is a question of fact. *Laser Supply and Servs., Inc. v. Orchard Park Assocs.,* 382 S.C. 326, 676 S.E.2d 139 (Ct.App.2009). Because the instant case has been brought in the Court's original jurisdiction, it is within the province of this Court to make findings of fact and conclusions of law regarding the issues before us. *See Johnson v. Catoe,* 345 S.C. 389, 548 S.E.2d 587 (2001); S.C.Code Ann. § 14–3–340 (1976).

Initially, we find the Governor knew of his right to confidentiality, as it was clearly set forth and correctly stated in the complaint and the initial letter from the Commission, which was sent directly to Governor Sanford and not to his counsel. The Governor asserts, however, that his August 28th letter effected a "limited" waiver of confidentiality, and his expectation was that only the existence of an investigation and the contents of the Complaint would be made publicly available.

We disagree. The intent of the August 28th letter—which Governor Sanford himself signed and was written on the Governor's letterhead—is clear from the letter's plain language:

In an effort to once again go the extra mile, I would like to waive my right to confidentiality in your upcoming ethics probe.

Moreover, the Governor characterized this waiver as a "unilateral step." Governor Sanford's August 28th letter did not limit the waiver in any way, shape or form. It did not reference the very specifically delineated restrictions that had been outlined by Hayden to the Governor's counsel. Indeed, the Governor specifically stated this is "my decision." The additional language the Governor used in the letter, regarding "fighting for transparency," disclosure, as well as his reference to travel records—which would not have been disclosed under the partial waiver that had been discussed between the Governor's counsel and Hayden—indicates his intent was to waive

confidentiality **without limitation** and without reliance upon the communications between his counsel and Hayden.[7]

Thus, the only reasonable interpretation of Governor Sanford's August 28th letter is that it was an intentional relinquishment of the right to confidentiality, and therefore a valid—and complete—waiver. *Eason, supra.*

Governor Sanford also maintains that even when confidentiality is waived pursuant to section 8–13–320(10)(g), the waiver is limited by the regulations applicable to confidentiality. We disagree.

Section 8–13–320(10)(g) states that "[a]ll investigations, inquiries, hearings, and accompanying documents must remain confidential until final disposition of a matter unless the respondent waives the right to confidentiality."

Regulation 52–718 governs the confidentiality of the Commission's ethics proceedings. Subsection 52–718(F) provides as follows:

After the final disposition of a matter where a violation is found, the Commission shall prepare a public record which shall consist of the pleadings and record of the hearing. The Commission's internal and investigatory papers including work product shall not be made part of the public record.

Based on regulation 52–718(F), the Governor argues the Commission's "preliminary reports and other working papers remain confidential" even if the respondent has waived his right to confidentiality under section 8–13–320(10)(g). We disagree.

 Although regulations authorized by the Legislature generally have the force of law, a regulation may not alter or add to the terms of a statute. *Gaffney Ledger v. S.C. Ethics Comm'n,* 360 S.C. 107, 600 S.E.2d 540(2004); *Goodman v. City of Columbia,* 318 S.C. 488, 458 S.E.2d 531 (1995); *Banks v. Batesburg Hauling Co.,* 202 S.C. 273, 24 S.E.2d 496 (1943); *see also Society of Prof'l Journalists v. Sexton,* 283 S.C. 563, 567, 324 S.E.2d 313, 315 (1984) ("Although a regulation has the force of law, it must fall when it alters or adds to a statute.").

---

7. Governor Sanford's press release of the same day confirms this reading. *See* fn. 1, *supra.*

 Initially, we find Regulation 52–718(F) is not even implicated by this case because it addresses what would become the public record **after the final disposition of a matter where a violation is found.** In contrast, the Governor is primarily concerned with the release of investigatory materials during the ongoing investigation stage because—according to the Governor—he will not get a chance to present "his side of the story" until probable cause is found and a hearing. is held.[8] Regardless, because we find Governor Sanford has waived his right to confidentiality, the import of Regulation 52–718(F) is irrelevant. However, to the extent Regulation 52–718(F) may be construed to limit the materials covered by a **respondent's** waiver which is allowed by section 8–13–320(10)(g), it is invalid. *Gaffney Ledger v. S.C. Ethics Comm'n, supra* (a regulation may not alter the terms of a statute); *Goodman v. City of Columbia, supra* (same).

 Although we conclude the Governor's August 28th letter constituted a complete waiver of his right to confidentiality under section 8–13–320(10)(g), we hasten to add that the Governor's waiver does not reach the Commission's work product. To permit a respondent's waiver to include the Commission's work product and internal investigative process would chill the Commission's ability to thoroughly investigate a complaint. The policy reasons for maintaining the confidentiality of the Commission's work product (especially during the investigative process) are self-evident and compelling. Governor Sanford's waiver here, of course, reaches all documentation to which **he** is entitled.[9] Otherwise, we respect the Commission's authority in the first instance to determine what matters and documentation are subject to the Governor's

8. We note the plain language of the statute refutes the Governor's contention. *See* § 8–13–320(10)(h) ("The commission must afford a public official . . . who is the subject of a complaint the opportunity to be heard on the alleged violation under oath, the opportunity to offer information, and the appropriate due process rights, including, but not limited to, the right of counsel."). Counsel for the Commission confirmed at oral argument that the Governor has been allowed to offer information during the investigatory process, and has availed himself of that opportunity.

9. It is our opinion the waiver would not apply to the work product of the Commission, including mental impressions, generated during the internal investigative process.

waiver, which the Commission can make in ruling on the Governor's pending motion for an injunction. *See Brown v. Bi–Lo, Inc.,* 354 S.C. 436, 440, 581 S.E.2d 836, 838 (2003) ("[T]he Court generally gives deference to an administrative agency's interpretation of an applicable statute or its own regulation.").

Accordingly, to the extent the Governor's petition seeks injunctive relief, the petition is denied.

## CONCLUSION

For the reasons discussed above, the relief requested by both the Governor and the Speaker is

**DENIED.**

TOAL, C.J., BEATTY and KITTREDGE, JJ., concur.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES.

I agree with the majority that both petitions should be denied for the reasons stated.

I respectfully differ, however, with the finding of fact which concludes that the only reasonable interpretation of the Governor's letter of August 28, 2009, is that it constitutes a complete waiver of confidentiality under S.C.Code Ann. § 8–13–320(10)(g). Though the letter of August 28 certainly constitutes a waiver, I am not persuaded that the evidence before us demonstrates that the Governor knew that he was waiving *all* confidentiality. *See Eason v. Eason,* 384 S.C. 473, 682 S.E.2d 804 (2009) (waiver requires a party to have known of a right and known he was abandoning that right); *Historic Charleston Holdings, LLC v. Mallon,* 381 S.C. 417, 433, 673 S.E.2d 448, 456 (2009) (waiver is the voluntary and intentional abandonment or relinquishment of a known right by a party that knew of its rights, or of all the material facts upon which they depend). To the contrary, I conclude that the letter of August 28, 2009, though grandiose and poorly-articulated, is clearly the end-product of negotiations between the Governor's counsel and the executive director of the Ethics Commission. In making this finding, I have considered Mr. Hayden's letters of

August 18 and 27, 2009; the Governor's counsel's letter of August 24, 2009; the Governor's affidavit filed herein; and, of course, the Governor's letter of August 28, 2009.

I would have allowed the Ethics Commission to determine in the first instance the meaning and scope of the August 28, 2009, letter in the proceeding referenced by the majority. That avenue is now foreclosed. To the extent that the majority may suggest that a waiver submitted pursuant to S.C.Code Ann. § 8–13–320(10)(g) cannot be limited, I would find that the Governor's attempt at doing that which cannot be done, constitutes a nullity.