691 S.E.2d 465

**Paul DENMAN, Respondent,**

v.

**CITY OF COLUMBIA, City Council of the City of Columbia, City of Columbia Election Commission, Richland County Election Commission, Respondents,**

and

**Durham E. Carter, Appellant.**

**No. 26792.**

Supreme Court of South Carolina.

Heard March 24, 2010.
Decided March 24, 2010.

132

Kevin A. Hall, Karl S. Bowers, Jr., and M. Todd Carroll, all of Hall & Bowers, of Columbia, for Appellant.

Jay Bender of Baker, Ravenel & Bender, of Columbia, for Respondent Paul Denman.

Fernando Xavier Starkes, of Columbia, for Respondent City of Columbia Election Commission.

Kenneth E. Gaines, of Columbia, for Respondents City of Columbia and City Council of Columbia.

Bradley T. Farrar, of Columbia, for Respondent Richland County Election Commission.

PER CURIAM.

In this election matter, appellant appeals an order of the circuit court enjoining the City of Columbia (City) from hold-

ing an election on April 6, 2010, to fill the unexpired term of a city council member who resigned. We reverse.

## FACTS

Longtime City council member E.W. Cromartie resigned his District 2 City Council seat on March 9, 2010. The next day, City adopted a resolution requiring an election to be held on April 6, 2010, the same date as the general municipal election in Columbia,[1] to fill Cromartie's unexpired term. The resolution stated a notice of election must be published in *The State* Newspaper on or before March 14, 2010, and that the filing period for a person to file as a candidate would run from March 15th to March 19th.

The notice of election, which was published on March 14th, announced a general election for the City to be held on April 6. The notice stated the offices up for election were: (1) Mayor for term ending 2014; (2) Council Member for District 1 for term ending 2014; (3) Council Member for District 4 for term ending 2014; (4) Council Member for at-large seat for term ending 2014; and (5) Council Member for District 2 for term ending in 2012. The notice provided that people desiring to vote must have registered with the County Board of Voter Registration by March 5, 2010.

Paul Denman, a resident of District 2, filed a complaint in the circuit court on March 15th, arguing the action to hold the election to fill the District 2 seat was *ultra vires*. Denman sought an injunction to prevent City from conducting a special election on April 6th to fill the seat. Denman maintained he contemplated running for the seat to fill the unexpired term, but declined to do so because of the short time period between the announcement of the election and April 6th.

Appellant, who on March 16th filed his own complaint for an injunction, in which he maintained the election *must* be held on April 6th, sought to intervene in the instant action.

---

1. Notice of elections for the office of Mayor, City Council District 1, City Council District 4, and one City Council at large seat were published in *The State* Newspaper on December 21, 2009, and again on January 3, 2010. There is no question that these notices were proper.

In the meantime, South Carolina House Representative James E. Smith sought an opinion from the Office of the Attorney General concerning the proper date for the election. On March 16th, the Attorney General issued an opinion in which he concluded it was permissible for City to hold the election to fill Cromartie's seat on April 6th, but that some constitutional questions as to the adequacy of notice existed. The Attorney General opined that any determination of constitutionality should be addressed by a court as quickly as possible. Based on this opinion, it appears, City elected to proceed with the election.

The circuit court heard this matter on March 18th. The next day, the court issued an order granting appellant's motion to intervene. Later that same day, the court granted an injunction in favor of Denman and ruled City could not hold the election to fill the vacant seat on April 6th, and the earliest date such election could occur is June 15, 2010. Appellant filed a notice of appeal and moved to expedite case. The Court granted the motion to expedite.

## ISSUE

Did the circuit court err in granting an injunction and finding that City may not hold a special election to fill the District 2 seat the same day as the general election?

## ANALYSIS

The legislature permits a municipality to hold its elections, primary or otherwise, whenever it wishes. S.C.Code Ann. § 5–15–50 (2004); *Willis v. Wukela,* 379 S.C. 126, 665 S.E.2d 171 (2008). City has chosen to hold its general elections on the first Tuesday in April, rather than the first Tuesday following the first Monday in November. COLUMBIA, S.C.CODE § 6–6(a) (1998). The mayor and city council members are elected for terms of four years, and the terms for those offices are staggered, meaning one-half of the membership of the city council is elected every two years. COLUMBIA, S.C.CODE § 6–1(a) and (b) (1998).

At the heart of the instant dispute are three statutes. The first statute, S.C.Code Ann. § 5–7–200 (2004) governs the grounds for forfeiture of office of mayor or council member,

and the method to fill vacancies in those offices. Section 5–7–200(b) provides, "[a] vacancy in the office of mayor or council **shall** be filled for the remainder of the unexpired term **at the next regular election** or at a special election if the vacancy occurs one hundred eighty days or more prior to the next general election." (Emphasis added).

In the instant case, Cromartie resigned less than 180 days before April 6, 2010, the date of the next general election. Therefore, § 5–7–200(b) appears to require that an election to elect a council member to replace Cromartie and fill his unexpired term take place on April 6th, provided the term "regular election" means the general election scheduled for the first Tuesday in April.[2] Otherwise, the position must be filled by a special election, though the section does not specify precisely when such special election must occur.

The second statute, § 5–15–50 provides, "[e]ach municipal governing body may by ordinance establish municipal ward lines and the time for **general and special elections** within the municipality. **Public notice of the elections shall be given at least sixty days prior to such elections.**" (Emphasis added).

The third statute, S.C.Code Ann. § 7–13–35 (2009), which is titled "Notice of general, municipal, special, and primary elections," provides as follows:

> The authority charged by law with conducting an election **must publish two notices of general, municipal, special, and primary elections** held in the county in a newspaper of general circulation in the county or municipality, as appropriate. ... The first **notice must appear not later than sixty days before the election** and the second notice must appear not later than two weeks after the first notice.

(Emphasis added). Both of these general election statutes seem to require that, since Cromartie resigned on March 9th,

---

2. We believe the Legislature likely meant for a regular election to be the general election. Notably, S.C.Code Ann. § 7–1–20(1) (1976 & Supp. 2009) defines a general election as the election held for the election of officers to the regular terms of office provided by law. Section 7–1–20(2) defines a special election as any other election provided by law to be held under the provisions of law applicable to general elections.

sixty days notice is required prior to an election to fill the vacant seat.[3]

In granting the injunction, the circuit court found notice of the District 2 election was not published until March 14, 2010, twenty-three days prior to the general election date. He also found the period to campaign after the close of candidate filing was only eighteen days.

As to the issue of statutory conflict, the circuit court found that, where statutes cannot be read in harmony, the court must focus on constitutional policy considerations to resolve the dispute, and such focus necessarily involves an inquiry into the nature of an election. The court noted the United States Supreme Court has held voting is of the most fundamental significance under our constitutional structure, and that full and effective participation in the political process means a citizen can choose to become a candidate or participate as a voter.

Concerning the District 2 vacancy, the circuit court found Cromartie resigned unexpectedly after holding his position for more than twenty-five years. As a result of City's decision to hold the District 2 election on April 6th, it found citizens of District 2 only had approximately nine-and-a-half days to decide whether to file the documents necessary to effectuate a candidacy. The court found this time period was short for possible candidates, but that it had a much more profound effect on citizens of District 2 because voter registration books close thirty days prior to an election.[4] The court also found that, unless a District 2 resident was already registered to vote prior to the surprise resignation of Cromartie, whose seat was not set to expire until 2012, that voter. could not vote in the April 6th election.

The circuit court also found registered voters who wish to vote, but are unavailable or unable to get to the ballot box,

3. Sections 5–7–200 and 5–15–50 were adopted by the legislature as part of Act 283 in 1975. Section 5–15–50 originally stated a municipality must provide at least ninety days notice of elections. It was amended in 1978 to lower that requirement to sixty days. Section 5–7–200 has never been amended. Section 7–13–35 was adopted in 1978, and it has been amended several times.

4. S.C.Code Ann. § 7–5–150 (Supp.2009).

may be deprived of the opportunity to vote. The circuit court appeared to rule that absentee ballots, if made available only days before the election to voters who are in the military, overseas, or who are students, could disenfranchise voters.

## I. Statutory Construction

Appellant argues the circuit court erred in granting the injunction because § 5–7–200(b) is the more specific statute in that it deals precisely and exclusively with elections to fill vacancies in municipal offices, while §§ 5–15–50 and 7–13–35 deal generally with notice of elections. Based on our rules of statutory interpretation, we agree.

The primary purpose in interpreting statutes is to ascertain and effectuate the intent of the legislature. *Cain v. Nationwide Prop. and Cas. Ins. Co.,* 378 S.C. 25, 29, 661 S.E.2d 349, 351 (2008). Under the plain meaning rule, it is not the Court's place to change the meaning of a clear and unambiguous statute. *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "It is well settled that statutes dealing with the same subject matter are in *pari materia* and must be construed together, if possible, to produce a single, harmonious result." *Joiner ex rel. Rivas v. Rivas,* 342 S.C. 102, 109, 536 S.E.2d 372, 375 (2000). However, where two statutes are in conflict, the more recent and specific statute should prevail so as to repeal the earlier, general statute. *Hodges v. Rainey, id.* at 85, 533 S.E.2d at 581; *Stone v. City of Orangeburg,* 313 S.C. 533, 535, 443 S.E.2d 544, 545 (1994).

Furthermore, "[w]here there is one statute addressing an issue in general terms and another statute dealing with the identical issue in a more specific and definite manner, the more specific statute will be considered an exception to, or a qualifier of, the general statute and given such effect." *Spectre, LLC v. S.C. Dept. of Health and Envtl. Control,* 386 S.C. 357, 688 S.E.2d 844, 851 (2010). Specific statutes are not to be considered repealed by a later general statute unless there is a direct reference to the earlier statute or the intent of the legislature to do so is explicitly implied. *Atlas Food Systems and Serv., Inc. v. Crane National Vendors Div. of Unidynamics Corp.,* 319 S.C. 556, 558, 462 S.E.2d 858, 859 (1995); *City of Rock Hill v. S.C. Dept. of Health and Envtl. Control,* 302 S.C.

161, 167, 394 S.E.2d 327, 331 (1990); *Sharpe v. S.C. Dept. of Mental Health,* 281 S.C. 242, 245, 315 S.E.2d 112, 113 (1984). "Repeal by implication is disfavored, and is found only when two statutes are incapable of any reasonable reconcilement." *Capco of Summerville, Inc. v. J.H. Gayle Const. Co., Inc.,* 368 S.C. 137, 141–42, 628 S.E.2d 38, 41 (2006).

We hold § 5–7–200(b) is the more specific statute and §§ 5–15–50 and 7–13–35 are general statutes. The plain language of § 5–7–200(b) requires that a vacancy in a municipal office shall be filled for the remainder of the unexpired term at the next regular election if the vacancy occurs less than 180 days prior the next general election. In the instant case, Cromartie resigned less than 180 days prior to the April 6th election, which is the precise scenario envisioned by the legislature when it adopted § 5–7–200(b). Sections 5–15–50 and 7–13–35 are more general in nature.

While we acknowledge § 7–13–35 has a somewhat tortured procedural history concerning whether it applies to municipal elections, we believe this statute is general as to notice of all elections, and it cannot prevail over a specific statutory provision concerning the timing for elections to fill vacancies. The legislative history of § 7–13–35, while interesting, does not evidence a specific intent to repeal any portion of § 5–7–200. As such, we are constrained by the rules of statutory construction that a statute of specific nature is not to be considered as repealed in whole or in part by a later general statute, unless there is a direct reference to the former or the intent of the legislature to repeal is explicitly implied therein. *Spartanburg County Dept. of Soc. Serv's v. Little,* 309 S.C. 122, 125, 420 S.E.2d 499, 501 (1992).

Furthermore, while the circuit court found the issue of sufficient notice essentially controlled which statute applied, that finding was in error. First, although Denman argues permitting an election without sixty days notice creates an absurd result, we are not faced with an absurd result in the instant case. *See e.g. Lancaster County Bar Assoc. v. S.C. Comm. on Indigent Defense,* 380 S.C. 219, 670 S.E.2d 371 (2008) (holding the Court should avoid construing a statute so as to lead to an absurd result, and it will reject an interpretation which leads to an absurd result that could not have been

intended by the legislature). Here, the rules of statutory construction provide that the specific statute must prevail over a general statute. Furthermore, while Denman has raised the issue of an election with substantially less notice than the one at issue in the present case,[5] such a situation is not before the Court.

Additionally, while §§ 5–15–50 and 7–13–35 require sixty days notice of elections generally, a number of statutes permit elections with less notice. For example, special elections relating to a change in the form of government, arguably a very significant decision for voters, require only three weeks notice pursuant to S.C.Code Ann. § 5–5–50 (2004). As noted by appellant, other issues such as bond referenda often call for shorter periods of time than the sixty days notice at issue in the instant matter. *Yonce v. Lybrand,* 254 S.C. 14, 173 S.E.2d 148 (1970) (noting a vote on a bond referendum required fifteen days notice to the public); *see also* S.C.Code Ann. § 4–11–265(D)(1) (1986) (requiring not less than five nor more than fifteen days notice of a referendum involving the budgetary powers and election of the governing bodies of special purpose districts).

## II. Injunction

■ Appellant also argues the judge erred in enjoining City from conducting the election on April 6th. We hold that Denman has failed to satisfy his burden of showing he was entitled to an injunction.

■ Actions for injunctive relief are equitable in nature. *See Grosshuesch v. Cramer,* 367 S.C. 1, 4, 623 S.E.2d 833, 834 (2005). In equitable actions, an appellate court may review the record and make findings of fact in accordance with its own view of the preponderance of the evidence. *Id.* at 4, 623 S.E.2d at 834. To obtain an injunction, a party must demonstrate irreparable harm, a likelihood of success on the merits, and the absence of an adequate remedy at law. *Id.* at 4, 623 S.E.2d at 834; *Sanford v. S.C. State Ethics Com'n,* 385 S.C. 483, 496, 685 S.E.2d 600, 607 (2009). "An injunction is a drastic remedy issued by the court in its discretion to prevent

---

**5.** Denman's example concerns a resignation on April 5th and an election to fill the vacancy the next day.

irreparable harm suffered by the plaintiff." *Scratch Golf Co. v. Dunes W. Residential Golf Props., Inc.,* 361 S.C. 117, 121, 603 S.E.2d 905, 907 (2004).

We hold Denman has failed in his burden of showing he is entitled to injunctive relief because he cannot show irreparable harm. Notably, while he maintains voters in District 2 will be disenfranchised if the election is held on April 6th, he has presented no evidence, save for his own statement that he would have run for the office but for the short notice period, to prove any voter or prospective candidate has been disenfranchised. In fact, Denman's argument that candidates do not have proper notice of the election is directly contradicted in that eight candidates have filed to run for the District 2 seat. Denman has also failed to present, for example, any evidence that a voter who wishes to vote for a District 2 candidate cannot do so because the voter missed the deadline to register. Furthermore, while the circuit court found absentee voters could be disenfranchised, there is no evidence in the record that the County Election Commission does not have sufficient time to ensure absentee ballots are properly distributed. Finally, while we loathe the suggestion of any further litigation in this matter, Denman and other voters do have the option of contesting an election if irregularities exist. *E.g. Armstrong v. Atlantic Beach Mun. Election Com'n,* 380 S.C. 47, 668 S.E.2d 400 (2008).[6]

## CONCLUSION

We hold the circuit erred in granting the injunction and in declaring a new schedule for the election. Therefore, the order is **REVERSED.**

TOAL, C.J., PLEICONES, BEATTY, HEARN, JJ., and Acting Justice JAMES E. MOORE, concur.

---

**6.** We also note the circuit court ordered the election to fill District 2 vacancy could occur as early as June 15, 2010. However, this ruling ignores the timing requirements for a special election found in S.C.Code Ann. § 7–13–190(C) (Supp.2009).