716 S.E.2d 337

RAWLINSON ROAD HOMEOWNERS
ASSOCIATION, INC., Appellant,

v.

Ronald D. JACKSON, and PHH Mortgage Corporation
as successor in interest to Coldwell Banker
Mortgage, Defendants,

of whom Ronald D. Jackson is Respondent.

No. 4893.

Court of Appeals of South Carolina.

Heard Sept. 13, 2011.
Decided Sept. 28, 2011.

D. Ryan McCabe, of Columbia, for Appellant.

Thomas B. Roper, of Rock Hill, for Respondent.

PER CURIAM.

The Rawlinson Road Homeowners Association (Association) appeals from the master-in-equity's order granting Ronald D. Jackson's motion for summary judgment and denying the Association's request for injunctive relief. We affirm.

## FACTS

In 2006, Jackson purchased property in Phase I of the Brewington Park subdivision. Property in that neighborhood was subject to restrictive covenants outlined in the Declaration of Restrictive Covenants for Brewington Park Phase I (Declaration), dated October 11, 2000, and recorded the following day.

### I. Declaration and By-laws

The Declaration provided that all owners of property located in the subdivision would be members of the Association and must "abide by such rules and regulations as may be promulgated by [the Association] for holding, maintaining and up-keeping the amenities and common areas conveyed to the [Association]." It authorized the Association to levy annual assessments upon its members and to enforce the collection of those annual assessments through the imposition of interest, creation of a lien against the property, foreclosure, and "by any other legal proceeding." According to the Declaration, the Association could pursue "unpaid dues and accrued inter-

est, [as well as] all costs of collection, including reasonable attorney fees."

With regard to individual lots, Paragraph Eleven of the Declaration mandated:

Each owner shall keep his lot in an orderly condition and prevent it from becoming unkempt, unsightly, or unclean. Garbage receptacles, cans, and/or areas shall be constructed in accordance with standards established by the Architectural Control Committee. No lot shall be used, in whole or part, for the storage of rubbish of any kind. No trash, rubbish, stored materials, wrecked or inoperable vehicles, or similar unsightly items shall remain on any lot outside an enclosed structure; provided however, that the foregoing shall not be construed to prohibit temporary deposits of trash, rubbish, or similar items, or garbage receptacles for the purpose of removal. . . .

The Declaration contemplated a transfer of enforcement rights from the Developer to an Architectural Control Committee, the Association, and individual property owners. Furthermore, the Declaration provided that its restrictive covenants, which would run with the land and bind successive owners, could be "amended, in whole or in part, at any time" by a written and notarized document signed by the owners of a majority of the subdivision's lots.

Shortly after execution of the Declaration, the Association filed its by-laws (By-laws). Both the stated purpose and the terms of the By-laws contemplated the Association would address its attention to the common areas and amenities. Nonetheless, in addition to the annual assessments identified in the Declaration, the By-laws purported[1] to empower the Association to impose fines for violations of the terms of the Declaration, By-laws, or "regulations promulgated pursuant thereto," and to treat those fines as assessments. Furthermore, the By-laws purported to increase the interest rate on unpaid assessments from eight percent to ten percent and

1. Neither the By-laws nor a November 2007 amendment to them was notarized or subscribed by a majority of property owners. Consequently, the authority of those documents to alter the scope of the Declaration's restrictive covenants is questionable.

provided for late charges of $25 for unpaid assessments but $50 to $100 per week for unpaid fines.

In March 2002, the subdivision's developer recorded a document applying the Declaration's restrictive covenants to specific lots in the subdivision, including the one Jackson later purchased. The record does not indicate whether any similar document notified purchasers of the By-laws.

## II. The Boat, the Lien, and Procedural History

At the time Jackson purchased the property, no existing restrictive covenant specifically addressed parking a boat and trailer on a privately owned lot. However, on January 2, 2007, the Association, citing its authority to regulate the use of common areas and amenities under the Declaration and By-laws, adopted a set of rules and regulations (Rules). The Rules imposed new restrictions, including one that "[n]o ... trailers, ... boats, boating equipment (to include boat hitch or trailer) ... shall be parked on a homeowner's lot" or anywhere else within the subdivision. The Association notified Jackson that the parking of his boat and trailer constituted a violation of the Rules. After he failed to remove his boat and trailer, the Association imposed an initial fine of $50 and subsequent fines of $25 per week thereafter.

Later in January 2007, the Association recorded a Notice of Lien against Jackson's property for the unpaid fines. Jackson did not pay the fines. On November 30, 2007, the Association filed an amendment to the By-laws purportedly enabling the Association to promulgate rules governing the use of privately owned property within the subdivision.

In August 2008, the Association filed suit against Jackson and his mortgage lender, seeking to enforce the "no boats" rule and to foreclose on its purported lien against the property. Specifically, the Association sought: (1) injunctive relief requiring Jackson to remove the boat and trailer and preventing him from placing any boat or trailer on his property; (2) a determination of the exact amount Jackson owed the Association, including interest, late charges, attorney's fees, and costs of suit; (3) foreclosure of the Association's lien and sale of the property; and (4) an order empowering the sheriff "to place the successful purchaser at said foreclosure sale in possession

of the [p]roperty." Jackson answered and counterclaimed, seeking dismissal of the complaint, a declaratory judgment of his and the Association's rights under the restrictive covenants, and an award of attorney's fees.

In early 2009, the Association filed a motion for an injunction requiring Jackson to remove his boat from his lot, and Jackson filed a motion for summary judgment. On March 25, 2009, at the hearing on both motions, the Association advised the master it had withdrawn and wished to dismiss its foreclosure claim.

The master first heard arguments on the Association's motion for an injunction. At the commencement of its argument, the Association called Diane Neville as a witness, and Jackson objected. The master explained he did not generally permit witness testimony at hearings on motions. The Association stated "the reason [it] wanted to introduce a witness [was] to put in the record the documents used and to get in the [Rules]. Those documents are not filed as a matter of public record." However, the Association had provided copies of the documents as attachments to its motion, and Jackson stipulated to the authenticity of the documents the Association presented except for the Rules.[2] The master entered a signed copy of the Rules into evidence as the court's exhibit, stating he "would permit testimony for the limited purpose of [identifying] these [documents] as the signed copy of the same thing." After Jackson stated he would accept opposing counsel's authentication of the signed copy of the Rules without the need for testimony, the Association conceded it had no other purpose in offering witness testimony, and Neville did not testify.

On the merits of the motion, the Association urged the master to construe the "no boats" rule as a restrictive covenant itself, a limitation and definition of the Declaration's covenant that property owners must prevent their lots from becoming "unkempt, unsightly, or unclean." Subsequently, in a colloquy with the master, the Association conceded, "You

---

2. Jackson had received an unsigned copy of the Rules. The Association provided both Jackson and the master with a signed copy at the hearing.

can't use a rule and regulation ... to expand obligations on a lot owner beyond what's included in the [D]eclaration."

Jackson argued the Association's Complaint sought to enforce the Rules, not the restrictive covenants from the Declaration, and that the Rules exceeded the scope of the Association's authority to regulate common areas and amenities as established by the Declaration. Furthermore, he challenged the Association's authority to impose fines as having no basis in the Declaration. Finally, Jackson contended the question of whether the boat was "unsightly" under Paragraph Eleven of the Declaration was not properly before the master because the Association's Complaint omitted any allegation that the boat was unsightly.

Turning to the motion for summary judgment, Jackson highlighted some of the statements in his affidavit supporting the motion, including (1) he relied upon the restrictions in force at the time he purchased the property to permit him to store the boat and trailer he already owned and (2) although he refused to pay the fines relating to his boat, he was current in paying annual assessments levied by the Association. In addition, he argued the Association lacked the authority to create a lien by imposing fines. The Association noted its earlier argument that it promulgated the Rules under the authority of the Declaration. It further asserted the language in the Declaration pertaining to amenities and common areas did not limit the Association's regulatory authority only to those areas. The Association argued whether the boat was "unsightly" and whether Jackson misunderstood the prohibition against parking a boat on his property when he purchased the lot were issues of fact.

The master denied the Association's motion for an injunction and granted summary judgment to Jackson. In his order, the master found the restrictive covenants in place when Jackson purchased his property neither expressed nor implied a prohibition against boats or authorization for the Association to impose fines. He declared the restrictive covenants did not authorize the Association "to adopt rules and regulations relating to conduct on an individual lot." Finally, he declared the By-laws and Rules "null and void as they relate to the impositions of fines or assessments upon individu-

al lot owners based on the use of their respective lots" and vacated the Association's lien against Jackson's property.

The Association filed a motion to reconsider, which, after a hearing, the master denied in a Form 4 order. This appeal followed.

## LAW/ANALYSIS

### I. Summary Judgment

The Association asserts the master erred in granting summary judgment to Jackson despite finding that "factual issues arose" from the language in the Declaration. We disagree.

When reviewing the trial court's decision to grant summary judgment, an appellate court applies the same standard applied by the trial court. *Lanham v. Blue Cross & Blue Shield of S.C., Inc.,* 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. With the trial court's permission, parties may supplement or oppose affidavits using "depositions, answers to interrogatories, or further affidavits." Rule 56(e), SCRCP. However:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*Id.*

In ascertaining whether any triable issue of fact exists, the trial court must view all evidence and all inferences that can be reasonably drawn from it in the light most favorable to the non-moving party. *Belton v. Cincinnati Ins. Co.,* 360 S.C. 575, 578, 602 S.E.2d 389, 391 (2004). "[I]n cases applying the preponderance of the evidence burden of proof, the non-

moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Hancock v. Mid–South Mgmt. Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009).

"A court considering summary judgment neither makes factual determinations nor considers the merits of competing testimony; however, summary judgment is completely appropriate when a properly supported motion sets forth facts that remain undisputed or are contested in a deficient manner." *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 250, 626 S.E.2d 1, 5 (2006).

■ In the case at bar, none of the evidence properly before the master on summary judgment supported the Association's contention that a genuine issue of material fact existed. The record indicates Jackson filed a motion for summary judgment supported by an affidavit. The Association failed to file any opposing affidavits or to seek permission to oppose Jackson's affidavit in any other manner. Therefore, under Rule 56, only the pleadings [3] and Jackson's affidavit were available for the master's consideration.

An examination of the pleadings reveals the Complaint's allegations of Jackson's wrongdoing rested entirely upon a violation of the Rules. The Complaint stated that "Jackson ... violated the Rules ... of the Association" and specifically recited the provision banning boats. Although the Complaint incorporated the Declaration by reference, it failed to allege any violation of the terms of the Declaration. Instead, after stating Jackson's property was "expressly subject to those restrictive covenants set forth in the Declaration," the Association shifted focus to its authority to promulgate the January 2007 Rules. The Association claimed its authority derived from the November 2007 amendment to the By-laws, which purported to extend the Association's power to regulate "the use and enjoyment of any Lot." [4]

---

3. We note the Complaint incorporated a number of exhibits, including, for example, Jackson's deed and mortgage, the Declaration, the By-laws, and the Rules. Therefore, these documents were also properly before the master.

4. As the master recognized, the amendment that purportedly authorized regulation of private property was enacted several months *after* the

Jackson filed an Answer and Counterclaim, and the Association filed a Reply. However, neither document challenged the material facts.

In his affidavit supporting summary judgment, Jackson affirmed his ownership of the property and the applicability of restrictive covenants to it. He further stated he relied upon the fact that no covenant restricted the presence of a boat or trailer on private property at the time of his purchase.

Neither the pleadings nor Jackson's affidavit raised either the narrow question of whether a boat and trailer qualified as unsightly or even the broader question of whether Jackson violated any of the restrictive covenants in the Declaration. Although the Association argued both of these issues at the hearing, its failure to file a responsive affidavit disputing any factual issues precluded the master from denying summary judgment based upon any facts the Association purported to challenge. *See* Rule 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").

The material facts recited in the documents properly before the master were unchallenged: in 2006, Jackson purchased a lot that was subject to restrictive covenants that did not restrict the presence of a boat or trailer on a privately owned lot; Jackson immediately began storing a boat and trailer on his lot; in 2007, the Association promulgated rules prohibiting boats and trailers on private lots; and, after receiving notice of a purported violation, Jackson did not remove his boat or trailer. Accordingly, the master did not err in finding no genuine issue of material fact existed and granting summary judgment to Jackson.

## II. Injunction

In view of our determination that the master did not err in entering summary judgment, we need not reach the Association's issues relating to injunctive relief. *See Futch v. McAl-*

---

Association promulgated the Rules and began imposing fines on Jackson.

*lister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal). Even so, we address the merits of these issues so as to clarify the requirements for a motion for injunctive relief.

### A. Improper Analysis

First, the Association asserts the master erred in applying a summary judgment analysis to its motion for an injunction. We agree but affirm the denial of injunctive relief on other grounds appearing in the record.

An order granting or denying an injunction is reviewed for abuse of discretion. *Cnty. of Richland v. Simpkins,* 348 S.C. 664, 668, 560 S.E.2d 902, 904 (Ct.App.2002). An abuse of discretion occurs when the trial court's decision is unsupported by the evidence or controlled by an error of law. *Id.*

A party seeking injunctive relief "must demonstrate irreparable harm, a likelihood of success on the merits, and the absence of an adequate remedy at law. An injunction is a drastic remedy issued by the court in its discretion to prevent irreparable harm suffered by the plaintiff." *Denman v. City of Columbia,* 387 S.C. 131, 140–41, 691 S.E.2d 465, 470 (2010) (internal citations and quotation marks omitted).

The master's order denying injunctive relief included neither facts nor law supporting the denial. However, the hearing transcript demonstrates the master incorrectly focused his analysis on the existence of an issue of fact. He reasoned:

> I think at this stage I have to treat the motion for an injunction by the standard that would apply to motions for summary judgment because one generally is entitled to have a trial on an injunction on whether [i]njunctive relief is to be granted. I think that the argument of the [A]ssociation begs the resolution of certain issues of fact[,] not the least of which [is] what is unsightly[,] and thus I find that a motion—the motion for an injunction based on the record must be denied because in that connection there are—forget the issues of law for the moment—there is a factual issue

. . . as to what is unsightly and why so I deny the motion for an injunction.

Because the master did not apply the proper test to the Association's motion for an injunction, his decision was controlled by an error of law.

Nonetheless, we affirm because the record supports the denial of an injunction. *See* Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal."). To succeed in its motion, the Association had to establish that it would suffer irreparable harm without an injunction, lacked an adequate remedy at law, and would likely succeed on the merits. *See Denman,* 387 S.C. at 140–41, 691 S.E.2d at 470 (outlining criteria for injunctive relief). It failed to establish any of these three elements. Despite making both oral and written presentations of its motion for an injunction, the Association made no argument supporting either irreparable harm or a lack of an adequate remedy at law. Instead, it concentrated on validating the Rules and the Association's authority to enforce them. As to the third element, the master's grant of summary judgment effectively determined the Association had no likelihood of success on the merits. *See Brandt v. Gooding,* 368 S.C. 618, 625, 630 S.E.2d 259, 262 (2006) (holding because a trial court considering a motion for summary judgment examines both law and facts, the grant of summary judgment constitutes an adjudication on the merits). Because the Association failed to establish the three required elements for injunctive relief, it was not entitled to an injunction. Accordingly, we affirm the master's denial of injunctive relief on this basis.

## B. Exclusion of Testimony

Next, the Association asserts the master erred in refusing to permit it to introduce witness testimony at the injunction hearing. We disagree.

Generally, the admission or exclusion of testimony is a matter within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of that discretion. *Pike v. S.C. Dep't of Transp.,* 343 S.C. 224, 234, 540 S.E.2d 87, 92 (2000); *see also* Rule 43(e), SCRCP ("When a motion is based

on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but may direct that the matter be heard wholly or partly on oral testimony or depositions."). An abuse of discretion occurs when the trial court's decision is unsupported by the evidence or controlled by an error of law. *Simpkins,* 348 S.C. at 668, 560 S.E.2d at 904.

■ When a trial court excludes evidence, the presenting party may proffer it to the court:

The failure to make a proffer of excluded evidence will preclude review on appeal.... It is well settled that a reviewing court may not consider error claimed in the exclusion of testimony unless the record on appeal shows fairly what the rejected testimony would have been. However, this rule regarding proffers has been relaxed where the appellate court is able [to] determine from the record what the testimony was intended to show and that prejudice clearly exists.

*Jamison v. Ford Motor Co.,* 373 S.C. 248, 260, 644 S.E.2d 755, 761 (Ct.App.2007).

Here, the Association failed to proffer the excluded testimony after the master sustained Jackson's objection. Nonetheless, we find the intended content of the testimony is sufficiently clear from the record to affirm on the merits. The Association attempted to present one witness, Diane Neville, for the purpose of having a signed copy of the Rules, which was "not filed as a matter of public record," admitted at the hearing. The master stated his "usual practice [wa]s not to permit testimony in motion hearings for the simple reason that it afford[ed] no opportunity for the other side to respond." Thereafter, Jackson stipulated to the authenticity of the signed copy of the Rules, and the master received all of the Association's documents as exhibits. Once the master had accepted the documents, he asked the Association for what other purpose it intended to offer testimony. The Association responded, "I think that's it. The remaining issues, Judge, are legal and I think you can boil this case down." By the Association's own admission, Neville's proposed testimony would have related only to the authentication of one document. That document was admitted by stipulation of the parties,

rendering Neville's testimony needless. Accordingly, the master did not abuse his discretion by excluding it.

## CONCLUSION

We find the material facts that were properly before the master at the summary judgment hearing were undisputed. Accordingly, we affirm the master's grant of summary judgment.

We further find the master erred in evaluating the Association's motion for injunctive relief under a summary judgment standard. However, we find the Association failed to satisfy any of the three elements required for a grant of an injunction. As a result, we affirm on other grounds appearing in the record the master's denial of an injunction.

Finally, we find that although the Association failed to proffer Neville's testimony after the master sustained Jackson's objection to it, the record is sufficient to indicate what the content of that testimony would have been. In addition, we find the Association conceded that the parties' stipulation obviated the need for Neville's testimony. Therefore, we find the master's exclusion of that testimony was not an abuse of discretion. Accordingly, the master's decision is

**AFFIRMED.**

SHORT and WILLIAMS, JJ., and CURETON, A.J., concur.