# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Kaci May and Kaci May as guardian ad litem for
A.R.M., J.H.M., J.T.M., C.B.M., J.R.M., and J.W.M.,
Appellants,

v.

Dorchester School District Two, South Carolina
Department of Social Services, Michael Leach, and
Jasmine Flemister, Respondents.

Appellate Case No. 2020-001352

---

Appeal From Dorchester County
Maite Murphy, Circuit Court Judge

---

Opinion No. 6053
Heard June 7, 2023 – Filed March 13, 2024
Withdrawn, Substituted, and Refiled May 29, 2024

---

**AFFIRMED**

---

Deborah J. Butcher and Robert J. Butcher, both of The
Camden Law Firm, PA, of Camden, for Appellant.

Kenneth P. Woodington and William H. Davidson, II,
both of Davidson, Wren & DeMasters, of Columbia, for
Respondents South Carolina Department of Social
Services, Michael Leach, and Jasmine Flemister; and
Thomas Kennedy Barlow, Susan Marie Fittipaldi, and
Dwayne Traynor Mazyck, all of Halligan, Mahoney, &
Williams, of Columbia, for Respondent Dorchester
School District Two.

**MCDONALD, J.:** Kaci May filed this circuit court action seeking to enjoin the South Carolina Department of Social Services (DSS) from interviewing her children at school and to prevent Dorchester School District Two (School District) from facilitating such interviews without a court order, warrant, subpoena, or new allegation of abuse or neglect. May appeals the order denying injunctive relief and challenges the circuit court's finding that because Respondents acted within their express statutory authority, their efforts to interview the children did not implicate the Fourth Amendment. We affirm the well-reasoned order of the circuit court.

**Facts and Procedural History**

Kaci and Warren May (collectively, the Mays)[1] were the parents of seven children: four biological children (J.T.M., C.B.M., A.R.M., and J.W.M.) and an adopted sibling group (J.H.M., J.R.M., and L.C.M.).[2] One or more of the adopted children suffered severe sexual abuse while with their biological family.

On March 27, 2017, the Mays attended a daylong meeting with School District personnel at Sand Hill Elementary School to discuss four of the children. At this meeting, May alleged in graphic detail that one of the adopted children had brutally raped one or more children in the May home. May called this child, who was present at the meeting, a rapist and made other concerning statements.

The School District reported May's statements to DSS, which opened an investigation. As a part of the investigation, DSS conducted—or attempted to conduct—interviews with the five school-aged children at Sand Hill Elementary School on March 29 and March 30. On March 31, two DSS caseworkers went to the family home in an effort to contact May and see the children they were unable to interview at school, but May would not allow the caseworkers to enter the home and did not allow them to interview the children. DSS continued to investigate, and caseworkers conducted a combined school interview of three of the children

---

[1] Warren May passed away in 2020.

[2] The Mays adopted J.H.M., J.R.M., and L.C.M. from foster care in June 2015. At the time of the circuit court's bench trial, at least two of the adopted children had been moved from the May home to residential facilities.

on May 12.[3]  Later that day, DSS indicated a case of physical neglect against May; the Mays subsequently filed an administrative appeal of that determination.

On June 15, 2017, Dorchester County DSS Director John Dunne advised the Mays that he had conducted an interim review of the case and "concluded that the decision to indicate the case for Neglect is supported by a preponderance of the evidence."  Dunne also informed the Mays that DSS would seek intervention in family court.  On June 23, DSS stayed the administrative appeal pending the outcome of the family court case.

Despite the serious safety concerns she had raised, May resisted all DSS efforts to contact the children or visit their home during June, July, and August 2017.  Instead, she referred the caseworkers to her attorney.[4]  At the start of the new school year, May instructed the School District that no further interviews with her children were to occur without someone first contacting May or her counsel.[5]  On September 13 and 14, 2017, May withdrew J.H.M. and J.R.M. (two of the adopted children) from Sand Hill Elementary and Gregg Middle School and transferred them to Connections Academy, South Carolina's virtual charter school.

DSS filed a family court case seeking non-emergency removal of the children from the May home on September 14, 2017.  May counterclaimed, seeking, among other things, an order restraining DSS caseworkers from speaking with the Mays about legal issues in the case.  She also filed a motion seeking an order restraining DSS from "interrogating [her] children at school."

---

[3] DSS was later able to interview two of the children on May 25.  May conceded she did not object to DSS interviewing the children at school while the case was still within the investigative period.

[4] DSS's concerns are reflected in the caseworker's September 22, 2017 notes: "Kaci and Warren May have not allowed the department in their home.  No assessments have been made for this family.  The [Mays] have not been in direct contact with the department.  The family's attorney is not responding to emails to schedule visits. . . . The department is concerned about the allegations and the inability to get in the home.  The department is unable to properly assess for the safety and wellbeing of the minor children."

[5] The Sand Hill Elementary principal disregarded these instructions because the School District needed "a court order signed by a judge to make this happen."

DSS conducted additional in-school interviews in the fall of 2017. Three of the children were interviewed on September 18, one child was interviewed on September 22, and DSS conducted a brief, combined interview with three of the children on November 20.[6]

On December 7, 2017, May, individually and as guardian ad litem for the seven children, filed this circuit court action seeking preliminary and permanent injunctive relief to prevent DSS from interviewing her children at school. She also sought to enjoin the School District from facilitating such interviews unless DSS presented a court order, warrant, subpoena, or new allegation of abuse or neglect.

On June 14, 2018, the family court action was dismissed by voluntary stipulation. DSS agreed the "investigation beginning on or about March 28, 2017[,] resulting in a finding of abuse and/or neglect on or about May 12, 2017[,] is hereby overturned." DSS closed its case on June 21.

Following a hearing, the circuit court denied May's motion for a temporary restraining order, finding May failed to establish irreparable harm or the lack of an adequate remedy at law. The School District and DSS then moved to dismiss. The circuit court granted these motions in part and dismissed the individual School District defendants. The remaining governmental defendants answered May's complaint and denied she was entitled to permanent injunctive relief. At the subsequent August 2020 bench trial, the circuit court directed a verdict for the School District and DSS. May timely appealed.

**Analysis**

"To obtain an injunction, a party must demonstrate irreparable harm, a likelihood of success on the merits, and the absence of an adequate remedy at law." *Richland County v. S.C. Dep't of Revenue*, 422 S.C. 292, 310, 811 S.E.2d 758, 767 (2018) (quoting *Denman v. City of Columbia*, 387 S.C. 131, 140, 691 S.E.2d 465, 470 (2010)). "An injunction is a drastic equitable remedy courts may use in their discretion in order to prevent irreparable harm to a party . . . . and only where no adequate remedy exists at law." *Hampton v. Haley*, 403 S.C. 395, 409, 743 S.E.2d 258, 265 (2013). Although an order granting or denying a request for injunctive relief is generally reviewed for abuse of discretion, "where the decision turns on statutory interpretation . . . this presents a question of law." *Lambries v. Saluda Cnty. Council*, 409 S.C. 1, 8, 760 S.E.2d 785, 788 (2014). An appellate court

---

[6] DSS did not seek to interview the May children after November 20, 2017.

"reviews questions of law de novo." *Id.* at 7, 760 S.E.2d at 788 (quoting *Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008)).

## I.    Irreparable Harm

May argues the circuit court erred in finding she failed to demonstrate irreparable harm.  We disagree.

Initially, we note it is undisputed that DSS's last interview with any of the May children occurred in November 2017, and DSS closed its family court case in June 2018.  Before both the family and circuit courts, May failed to offer any evidence of threatened or pending DSS investigations or of further DSS plans to interview her children at a school.  Two of the three adopted children no longer live with the biological May family.

Significantly, May has not identified any injury aside from inconvenience or mild upset at the prospect of DSS returning to interview her children.  The children testified that they knew they did not have talk to DSS, and some exercised their right not to answer questions.  There is no evidence in the record that any of the children's grades suffered or that any of the children were harmed, much less to an extent that might have outweighed DSS's need to interview them regarding May's own report that one or more of her children had suffered sexual abuse by another child in the May home.  Although May testified the children were upset by the DSS interviews, there is simply no evidence to support a claim that any of the May children have been harmed or would suffer harm in the absence of injunctive relief.

At least two of the adopted children had significant prior physical and psychological challenges, including but not limited to the horrific sexual abuse they suffered while with their biological family.  These prior experiences caused stress and emotional harm far beyond any issue raised in the current matter.  Thus, it is difficult to comprehend how the emotional difficulty alleged could be attributed to the DSS interviews which, as discussed below, were appropriate and authorized by statute.  Notably, May failed to demonstrate that DSS returning to a school to interview her children was anything more than a hypothetical possibility insufficient to support her claim for injunctive relief.[7]  Accordingly, the circuit court properly found May failed to show the required irreparable harm.

---

[7] We decline to dismiss May's appeal as moot because her case presents an issue that is capable of repetition but usually becomes moot before it may be reviewed.

## II.     Likelihood of Success on the Merits

May next argues the circuit court erred in finding she failed to establish a likelihood of success on the merits and in ruling section 63-7-920 of the South Carolina Code (2010) "was not limited by her constitutional protections."  But the circuit court made no such ruling.  As to May's constitutional claims, the circuit court recognized the United States Supreme Court "has never held that a social worker's warrantless in-school interview of a child pursuant to a child abuse investigation violates the Fourth Amendment."  *See*, *e.g.*, *Camreta v. Greene*, 563 U.S. 692, 710–14 (2011) (examining in-school interviews in Fourth Amendment context but ultimately leaving the issue undecided and disposing of the case on mootness grounds).  The circuit court then noted the DSS interviews here were authorized by statute and that May failed to show either DSS or the School District acted unreasonably by interviewing the children or permitting the interviews.[8]  We agree with the circuit court.

Within twenty-four hours of receiving a report of suspected child abuse or neglect, DSS "must begin an appropriate and thorough investigation to decide whether the

---

*See Wardlaw v. S.C. Dep't of Soc. Servs.*, 427 S.C. 197, 204, 829 S.E.2d 718, 721 (Ct. App. 2019) (finding that an appellate court may address a matter despite mootness where it raises an issue capable of repetition that "usually becomes moot before it may be reviewed" (citing *S.C. Dep't of Mental Health v. State*, 301 S.C. 75, 76, 390 S.E.2d 185, 185 (1990)).  The interviews May challenges occur early in the process of abuse and neglect investigations, and a family court's review in such cases would be complete before any related civil action could be considered. *See*, *e.g.*, *Rainey v. S.C. Dep't of Soc. Servs.*, 434 S.C. 342, 351, 863 S.E.2d 470, 475 (Ct. App. 2021) (noting statutorily mandated timelines for investigation once DSS receives a report of possible abuse or neglect).

[8] The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. Amend IV.  The Fourteenth Amendment extends this constitutional guarantee to searches and seizures by state officers, *Elkins v. United States*, 364 U.S. 206, 223–24 (1960), including public school officials, *New Jersey v. T.L.O.*, 469 U.S. 325, 336–37 (1985).

report should be 'indicated' or 'unfounded.'" *See* S.C. Code Ann. § 63-7-920(A)(1) (2010); *see also Jensen v. S.C. Dep't of Soc. Servs.*, 297 S.C. 323, 331–32, 377 S.E.2d 102, 106–07 (Ct. App. 1988) (holding South Carolina Child Protection Act mandating "an 'appropriate and thorough' investigation," of an allegation of child abuse imposed a ministerial duty of care on county officials). Regarding investigations and case determinations, section 63-7-920(C) provides:

> The department or law enforcement, or both, may interview the child alleged to have been abused or neglected and any other child in the household during the investigation. The interviews may be conducted on school premises, at childcare facilities, at the child's home or at other suitable locations and in the discretion of the department or law enforcement, or both, may be conducted outside the presence of the parents. To the extent reasonably possible, the needs and interests of the child must be accommodated in making arrangements for interviews, including time, place, method of obtaining the child's presence, and conduct of the interview. The department or law enforcement, or both, shall provide notification of the interview to the parents as soon as reasonably possible during the investigation if notice will not jeopardize the safety of the child or the course of the investigation. All state, law enforcement, and community agencies providing child welfare intervention into a child's life should coordinate their services to minimize the number of interviews of the child to reduce potential emotional trauma to the child.

In our view, the language of § 63-7-920(C) establishes the circuit court correctly found May failed to demonstrate a likelihood of success on the merits. However, we must also address May's arguments that (1) the probable cause standard for warrants issued under § 63-7-920(B) applies to interviews conducted pursuant to § 63-7-920(C) and (2) the interviews here violated the Fourth Amendment.

Section 63-7-920(B) provides:

> The department may file with the family court an affidavit and a petition to support issuance of a warrant at any time after receipt of a report. The family court must issue the warrant if the affidavit and petition establish probable cause to believe the child is an abused or neglected child and that the investigation cannot be completed without issuance of the warrant. The warrant may authorize the department to interview the child, to inspect the condition of the child, to inspect the

premises where the child may be located or may reside, and to obtain copies of medical, school, or other records concerning the child.

May's assertion that the probable cause standard for warrants issued under subsection (B) applies to interviews conducted under subsection (C) is foreclosed by the plain language of subsection (C), pursuant to which DSS conducted the in-school interviews of the May children. While subsection (B) does contain a warrant provision, its terms apply only when "the investigation cannot be completed without issuance of the warrant." § 63-7-920(B). Among other things, subsection (B) authorizes DSS to inspect the premises where an abused or neglected child may be located or may reside. *Id.* In other words, DSS *may* seek a warrant when other authorized means, such as in-school interviews, are unavailable.[9] Moreover, subsection (C) states DSS "may interview the child alleged to have been abused or neglected and any other child in the household during the investigation" and such interviews "may be conducted on school premises, at childcare facilities, at the child's home or at other suitable locations and in the discretion of the department or law enforcement, or both, may be conducted outside the presence of the parents." § 63-7-920(C).

In her appellate brief, May arguably concedes subsection (B) is inapplicable to in-school interviews conducted under subsection (C) by stating "schools are often the only places SCDSS and/or law enforcement may have contact with a child without the undue influence of an abusive or neglectful caregiver." In either case, we find the plain language of subsection (C) permits DSS to interview children at school and—in the discretion of DSS or law enforcement—such interviews may be conducted "outside the presence of the parents." § 63-7-920(C).[10]

With respect to May's Fourth Amendment argument, "[i]n determining whether a search and seizure is reasonable, we must balance the government's need to search with the invasion endured by the plaintiff." *Wildauer v. Frederick County*, 993 F.2d 369, 372 (4th Cir. 1993); *see also*, *State v. Houey*, 375 S.C. 106, 111, 651

---

[9] In practice, and as referenced by May's counsel at trial, such warrants are referred to as "inspection warrants."

[10] This might be a different case had the governmental defendants even arguably abused their statutory discretion in investigating the actions May reported at her initial meeting with the School District. There simply are no facts here to support such a claim.

S.E.2d 314, 316–17 (2007) (finding "the State's need to search must be balanced against the invasion occasioned by the search, and the search will be reasonable if the State's interest outweighs the interest of the individual" in cases involving the "health and safety of victims.").  Like the circuit court, we have found no case in which our supreme court has determined a social worker's warrantless in-school interview of a child for purposes of a statutorily mandated investigation following a report of abuse or neglect violates the Fourth Amendment or the protections of the South Carolina Constitution.

In sum, May failed to show either that DSS acted unreasonably by interviewing her children at school or that the School District unreasonably permitted the in-school interviews expressly authorized by statute.[11]  Based on the largely undisputed testimony, we agree with the circuit court that the interviews here were reasonable in inception and scope following May's own report of sexual abuse; her subsequent refusal to allow DSS to interview the children in their home necessitated that they be interviewed at school.  And, May admits legitimate circumstances may exist in some cases for DSS to interview a child at school without a court order or a warrant.  Concessions aside, we find § 63-7-920(C) expressly authorizes DSS to interview children at school without a warrant when conducting an investigation mandated by § 63-7-920(A)(1).  Additionally, we find meritless May's claim that the either the School District or DSS unreasonably "seized" her children, or otherwise violated their constitutional rights by calling them from class and asking limited, basic questions for a short period of time.  In light of the state's significant interest in interviewing the children following May's report, the circuit court properly found the in-school interviews did not violate the family's constitutional rights.  It follows that the circuit court correctly denied May's request for injunctive relief in light of her inability to show a likelihood of success on the merits.

## III.   Adequate Remedy at Law

May next argues the circuit court erred in finding she would have an adequate remedy at law to address any harm she or the children might suffer from future "interrogations."  Again, we disagree.

---

[11] Although May's appellate brief cites several cases containing broad statements of general legal principles, she fails to cite any case actually finding the kind of interviews DSS conducted here might violate a child's (or parent's) Fourth Amendment rights.

Although May was required to offer evidence demonstrating that at some point in the future, DSS is likely to again interview her children at school in direct contravention of her wishes, she failed to do so. While it is always possible that future events could lead to another DSS investigation, it is speculative to assume such will actually take place. In the event another DSS investigation does take place, May agreed she would "not [be] opposed to DSS interviewing the children that may be subject to a report of abuse and neglect. . . ." Nor would she object to additional interviews in a case "still in the investigation period." However, May would object to interviews conducted after the conclusion of an investigation resulting in an indication.

We find May has failed to establish the lack of an adequate remedy at law to address future harm that might result from subsequent DSS interviews. May's decision to forgo a state law damages claim and pursue only injunctive relief does not render the remedy at law inadequate for a case that might merit relief. Here, the circuit court properly found May failed to show she lacked an adequate remedy at law for harm that might result from "future interrogations."

**Conclusion**

Certainly, there may be—and have been—situations in which state actors overreach or otherwise act in a manner requiring constitutional scrutiny. There may be—and have been—cases in which the actions of DSS caseworkers or other agents or employees rise to the level necessary for injunctive relief in the constitutional context. This is not such a case. For these reasons, the circuit court's order denying injunctive relief is

**AFFIRMED.**[12]

**THOMAS and HEWITT, JJ., concur.**

---

[12] As our findings here are dispositive, we decline to address Respondents' additional sustaining grounds. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address remaining issues when a prior issue was dispositive).