**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

SCDSS, Respondent,

v.

Michelle Stevens, Cahli Johnson, Kelcey Anderson, and Naomi Orozco, Defendants,

Of whom Michelle Stevens is the Appellant.

In the interest of minors under the age of eighteen.

Appellate Case No. 2024-001406

―――――――――

Appeal From York County
Thomas Henry White, IV, Family Court Judge

―――――――――

Unpublished Opinion No. 2025-UP-209
Submitted June 23, 2025 – Filed June 25, 2025

―――――――――

**AFFIRMED**

―――――――――

Nancy Carol Fennell, of Irmo, for Appellant.

Andrew Troy Potter, of Potter Law, LLC, of Anderson, for Respondent.

Mitzi Campbell Williams, of Lexington, for the Guardian ad Litem.

―――――――――

**PER CURIAM:** Michelle Stevens (Mother) appeals the family court's permanency planning order granting custody of her minor children, SJ and IJ, to their paternal grandmother (Grandmother); granting custody of her minor child AJ to a kinship caregiver, and closing the case. On appeal, Mother argues the evidence presented at the hearing did not support the family court's finding that she had not remedied the conditions that caused the removal of the minor children (Children). We affirm.

"In appeals from the family court, this [c]ourt reviews factual and legal issues de novo." *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). Although this court reviews the family court's findings de novo, it is not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis v. Lewis*, 392 S.C. 381, 385, 709 S.E.2d 650, 651-52 (2011). The appellant has the burden of showing this court the greater weight of the evidence is against the family court's findings. *Id.* at 392, 709 S.E.2d at 655. Further, "[i]n appeals from the family court, the appellate court has jurisdiction to find facts in accordance with its view of the preponderance of the evidence." *Id.* at 384, 709 S.E.2d at 651 (quoting *Eason v. Eason*, 384 S.C. 473, 479, 682 S.E.2d 804, 807 (2009)); S.C. Code Ann. § 63-7-20(22) (Supp. 2024) ("'Preponderance of evidence' means evidence which, when fairly considered, is more convincing as to its truth than the evidence in opposition.").

Based on a de novo review, we find the evidence supports the family court's findings. In January 2020, DSS indicated a case against Mother and Father (collectively, Parents) for domestic violence and SJ and IJ were moved from Parents' home.[1] In July 2021, while the family preservation case was in progress, AJ was moved from the home shortly after his birth due to domestic violence issues, possible drug use, and derelict conditions in the home.[2] Subsequently, DSS filed a non-emergency removal action in June 2022. Testimony from the hearing supports that the domestic violence is ongoing, and Mother has failed to make behavioral changes.

―――――――――

[1] In September 2020, SJ and IJ were placed in Grandmother's care, where they have since resided.

[2] AJ was subsequently placed in the care of a kinship caregiver, where he has since resided.

At the permanency planning hearing, multiple witnesses testified about physical violence between Mother and Father: AJ's caregiver testified that on January 23, 2021, Mother told her that Father had choked her until she blacked out, and two DSS caseworkers testified Mother had never acknowledged the presence of domestic violence in the home she continues to share with Father. Mother testified she and Father attended counseling; however, Parents' testimony at the hearing minimized the severity of past episodes of domestic violence. Additionally, the guardian ad litem (GAL) also indicated she had observed negative interactions between Parents and was concerned their interactions had not improved after they attended couple's counseling; the family court found the GAL's testimony was credible. *See Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52 (stating the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony). Further, the family court found there was credible testimony that Father had called Mother "stupid" and "an f'ing idiot" when she attempted to wipe AJ's nose during a visit in February 2024. Finally, Mother presented an expert witness who had performed her parental assessment. Although the expert testified Mother would be able to care for and address Children's needs if she were provided more practical treatment opportunities, on cross examination, the expert could not confirm the safety of the home for Children. The expert witness explained this was because she did not evaluate Father, who still lived with Mother and had a history of domestic violence and substance abuse.

In addition to Parents failing to address the domestic violence in the home, evidence at the hearing indicated Mother had not developed her parenting skills throughout the case. The DSS caseworkers and the GAL testified they did not observe any behavioral changes from Parents. The GAL also noted Parents had difficulty handling Children, as well as their fourth child, during visits. Although Mother testified she was delayed in starting her in-home parenting classes because the caregivers had prevented Children from going to Mother's house, we note the caseworkers both testified Parents had delayed the start of the second set of parenting classes because they felt they did not need additional classes.

Finally, we hold allowing Children to remain with caregivers was in their best interest. *See S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000) ("In a termination of parental rights case, the best interests of the children are the paramount consideration."). Evidence presented at the hearing indicated there was a safety risk for Children because both Parents denied Father had choked Mother to the point of passing out and Mother indicated the incident had not been addressed at counseling. The GAL had also observed negative

interactions take place between Parents and was concerned about the lack of improvement in Parents' interactions even though they had attended counseling. A caseworker and the GAL indicated they did not believe Parents could handle all four of their children, AJ's caregiver testified she believed Parents lacked sufficient parenting skills, and the GAL indicated Parents' parenting skills had not improved over the course of the case. Additionally, Children each had special needs for which they received treatment—SJ had cerebral palsy, IJ had behavioral issues, and AJ had autism. Notably, Grandmother had testified Parents had previously declined to enroll IJ in a program that would be beneficial to her because they did not believe there was anything wrong with her.

Currently SJ and IJ reside with Grandmother, and AJ resides with the kinship caregiver. The caseworkers and the GAL had no concerns with the caregivers and believed they took good care of Children. The GAL believed it was in Children's best interest for custody to remain with their caregivers and for DSS to close the case.

Based on the foregoing, we hold the family court properly granted custody to caregivers and closed the case.

**AFFIRMED.**[3]

**KONDUROS, MCDONALD, and VINSON, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.